579 So.2d 448 (1991)
Edgar C. MELTON
v.
GENERAL ELECTRIC COMPANY, INC., General Electric Environmental Services, Inc., Magnolia Transportation Company, Inc., George Law, ABC Insurance Company, DEF Insurance Company, GHI Insurance Company and John Doe.
Nos. 90 C 2249, 90 C 2256.
Supreme Court of Louisiana.
May 6, 1991.
Rehearings Denied June 20, 1991.
*449 John G. Lankford, for plaintiff-applicant Edgar Melton.
Craig Robert Nelson, Christina P. Fay, Hulse, Nelson & Wanek, for defendants-respondents Gen. Elec., Gen. Elec. Envir. Serv.
Donald C. Massey, Janis Van Meerveld, Adams & Reese, for defendant-respondent Ins. Co. Penn.
WATSON, Justice.
In this tort suit to recover damages for disabling injuries, the primary issue is whether the trial judge erred in refusing a jury interrogatory on the comparative fault of plaintiff's employer.

FACTS
On August 26, 1983, Edgar C. Melton sustained an accidental injury while employed by Steel Tank Construction Company, Inc. Melton was working at the Tenneco Refinery in Chalmette as a construction boilermaker. On the day of the accident, his crew was assembling refinery components, which included large metal "cyclones" and "dip legs."
Defendant, General Electric Environmental Services, Inc. (GEESI), manufactured the cyclones and dip legs, reworked them in Harvey, and loaded them on tractor/trailer rigs for transport to Chalmette. The trucking was done by defendant, Magnolia Transportation Company, Inc. Magnolia's drivers inspected the loads for stability and participated in or supervised tying down the loads.
On the day of the accident, Magnolia's employee, Don Domangue, was dispatched to pick up a GEESI load. Domangue had never hauled this type of equipment but was told he could rely on the expertise of the GEESI crew. George Wayne Law supervised the GEESI crew, which loaded two large conical cyclones and one dip leg on Domangue's trailer, an unusually large load. The dip leg was placed on top, between the two cyclones. The large ends of the funnel shaped cyclones were approximately four feet in diameter. Wooden blocks or chocks could not be used on the dip leg because the cyclones raised it three or four feet above the trailer bed.
Two of GEESI's employees, Wayne John Couvillion and Gary Weiland, testified that they complained about the unsafe load configuration but were told by their supervisors to load the components as directed. Couvillion said he told the general foreman that the dip leg would roll off the truck when it was unloaded.
According to Couvillion, the two cyclones weighed seven to nine tons each. They had dip legs welded to them and they were loaded facing in opposite directions. Couvillion's foreman told him to load the truck with two cyclones, but the general foreman, Bill Malone, said to add the dip leg. If Couvillion had known that he had to include the dip leg, he would have loaded it first.
Law did not recall any complaints about loading this particular trailer. The load consisted of two cyclones and one 25 foot long dip leg. A first stage cyclone is about 26 feet long and a second stage cyclone is about 23 feet long. A 19 foot dip leg was welded to the second stage cyclone, making an assembled cyclone unit 42 feet long. Because the load was recessed behind the front of the trailer and the trailer was also 42 feet long, there was an 18 to 20 inch protrusion off the back of the truck.
In brief, GEESI argues that the dangerous truck load described by Couvillion and Weiland was not on the truck involved in the accident. This contention relies on discrepancies in the descriptions of the equipment by the witnesses. However, trial was held five years after the accident, when perfect harmony could not be expected.
Law admitted that the term cyclone is often used interchangeably for both cyclones *450 and cyclone units. The bill of lading for this load identified: "2 Cyclone Ass'y" and "1 dip leg."
When Weiland heard about Melton's accident, he immediately remembered the one load with "an extra dip leg." (Vol. 6, p. 48). That dip leg had rolled over during loading. The load was "a bad load to send out," and there was general discussion about "how bad the load was." (Vol. 6, p. 51). Afterward, word came back that the dip leg had rolled off the trailer, injuring Melton.
The jury could and did reasonably conclude that the oversized load was the primary cause of the accident.
Domangue accepted the load and hauled it to Chalmette. The work site was controlled and supervised by Fluor Constructors, Inc., Tenneco's primary contractor on the project. Steel Tank was a subcontractor to Fluor. The Steel Tank crew, which consisted of Melton, Ralph R. Cleland, Skip Hartman and William Russel Bradley, commented on Domangue's unstable truck load when it came into the area.
Melton's crew was responsible for unloading all of the cyclones and dip legs. Melton mounted the trailer and decided to first unload one of the cyclones. Melton said he directed Domangue to leave a chain on the dip leg while the first cyclone was unloaded. However, Domangue did not hear this instruction and he removed all the chains and binders from his trailer. Melton said that he did not check to see if the dip leg were chained and the dip leg would not have moved if it had been chained.
Melton and Bradley got on the truck, while Cleland and another boilermaker remained on the ground. The crew unloaded one of the cyclones. Bradley returned to the ground, leaving Melton alone on the truck. When the dip leg started rolling, it caught Melton. Bradley, who saw Melton hit from the back and knocked through the air to the ground, was afraid that Melton had been killed. Cleland grabbed Melton under the arms and pulled him from beneath the falling dip leg. As a result, the dip leg hit Melton's ankle instead of his body. Cleland, Hartman and Bradley managed to free Melton's foot from the dip leg.
Although there were general complaints from Melton's crew about disregard of safety on the part of Steel Tank's supervisors, there were no specifics relating to this accident and no evidence of negligence on the part of Steel Tank.

DAMAGES
Melton, age 27 at the time of the accident, has some residual symptoms from the broken ankle and sustained injuries to his cervical discs involving interspaces C4-5, C5-6 and C6-7. He had a triple cervical disc excision and fusion, which gave him substantial relief from pain. He continues to suffer from aching pain in his neck and has no neck mobility. He later developed back problems. Melton is totally and permanently disabled for any occupation to which he is reasonably suited by education and experience.

DECLARATORY JUDGMENT
Prior to trial on the merits, the trial judge granted a motion for declaratory judgment by Insurance Company of the State of Pennsylvania, Magnolia's insurer. The trial judge decided that GEESI was not an insured under Magnolia's policy as a lessee or borrower of Magnolia's truck.
While the judgment is more in the nature of summary judgment, there is no error by the trial court.

TRIAL AND APPELLATE JUDGMENTS
During trial, Magnolia Transportation Company, Inc. and its insurer, Insurance Company of the State of Pennsylvania, compromised Melton's claim against Magnolia for $250,000.
At the conclusion of trial, despite GEESI's objection, the trial judge refused to pose a jury interrogatory about the fault of Steel Tank.
The jury answered special interrogatories, assessing fault of GEESI at sixty percent, Magnolia at twenty percent and Melton at twenty percent. The jury found no fault on the part of Fluor or Tenneco. Total damages were fixed at $1,011,500: $33,000 in past medical; $45,000 in future medical; $94,500 in past lost wages; $464,000 *451 in future lost wages; $250,000 for pain and suffering; $75,000 for mental anguish; and $50,000 for disability and disfigurement.
Judgment was rendered in favor of Edgar C. Melton against General Electric Environmental Services, Inc. and its insurer, Electric Mutual Liability Insurance Company, for $606,900, sixty percent of the total damages. The intervention of Steel Tank's compensation insurer, American Motorists Insurance Company, Kemper Group, was granted.
The court of appeal reversed on the ground that the jury should have considered any negligence of the employer, relying on Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308 (La.1984), LSA-C.C.P. art. 1812, and Nance v. Gulf Oil Corp., 817 F.2d 1176 (5th Cir.1987). The court of appeal decided Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975), could not be applied and remanded for a new trial. Melton v. General Elec. Co., Inc., 566 So.2d 98 (La.App. 4th Cir. 1990). Writs were granted to consider the opinion of the court of appeal. 572 So.2d 79 (La.1991).

FACTUAL CONCLUSIONS
The record fully supports the jury's conclusion that GEESI and Magnolia were primarily responsible for the accident with some fault on the part of Melton. There is no error in the allocation of comparative fault.
There is no abuse of discretion in the damages awarded. LSA-C.C. art. 2324.1.
The court of appeal's conclusion that a new trial might produce evidence of fault on the part of the employer is entirely conjectural and has no basis in the record. The pleadings do not allege negligence of the employer. Since GEESI asked for an interrogatory on Steel Tank's negligence, it is obvious that any evidence in support of that interrogatory would have been introduced, if only to exculpate the other defendants.

COMPARATIVE NEGLIGENCE OF AN EMPLOYER IN A WORKER'S SUIT AGAINST A THIRD PARTY TORTFEASOR
Reed v. Shell Offshore Inc., 872 F.2d 680 (5th Cir.1989), recognized that Louisiana's courts of appeal had refused to apportion fault between a solidary obligor and a statutorily immune employer. Reed held that the trial court did not err in refusing to submit the employer's liability to the jury. See Snyder v. Taylor, 523 So.2d 1348 (La. App.2d Cir.1988), writ denied, 531 So.2d 267; Senez v. Grumman Flxible Corp., 518 So.2d 574 (La.App. 4th Cir.1987), writ denied, 521 So.2d 1151; and Chatelain v. Project Square 221, 505 So.2d 177 (La.App. 4th Cir.1987), writ denied, 508 So.2d 71. Reed followed these Louisiana cases, which are contrary to Nance. Also see Davis v. Commercial Union Ins. Co., 892 F.2d 378 (5th Cir.1990); Myers v. Pennzoil Co., 889 F.2d 1457 (5th Cir.1989); and Franklin v. Oilfield Heavy Haulers, 478 So.2d 549 (La. App.3d Cir.1985), writ denied, 481 So.2d 1330 (La.1986).
The trial court had persuasive authority for not presenting the question of Steel Tank's negligence to the jury.
Act 534 of 1983 was effective August 30, 1983, shortly after this accident. It amended LSA-C.C.P. art. 1812(C)(2) relative to jury interrogatories to allow a jury to decide: "If appropriate, whether another person, whether party or not, other than the person suffering injury, death, or loss, was at fault,...." Although the effective date of Act 534 of 1983 was after this accident, the statute is procedural. Lemire, supra. Despite the statute's use of permissive "may" language, a trial judge is required, absent waiver by all parties, to give the statutory interrogatories. Lemire, supra.
Implicit in Lemire is a finding that the requested interrogatory was "appropriate" because there was evidence of fault on the part of the Sewerage and Water Board, not a party defendant in the jury trial. Here, on the contrary, the interrogatory was not "appropriate" because there was no evidence to support a finding of negligence by Steel Tank. Moreover, Act 534 of 1983 does not specify that a jury must determine the fault of employers. Since the compensation *452 principle supercedes the question of fault by giving employers tort immunity, employers appear to be excluded from the Act. See Guidry v. Frank J. Guidry Oil Co., Inc., docket nos. 91-C-0078 and 91-C-0111, ___ So.2d ___ (La.1991). To require interrogatories on employers' fault without express legislative direction would be an unjustified judicial innovation.

CONCLUSION
There was no error by the trial court in not submitting an interrogatory on the comparative fault of plaintiff's employer, Steel Tank. Therefore, remand for a new trial is unwarranted.
For the foregoing reasons, the judgment of the court of appeal is reversed and the judgment of the trial court is reinstated. All costs are assessed to defendants/applicants, General Electric Environmental Services, Inc. and Electric Mutual Liability Insurance Company.
REVERSED AND RENDERED.
CALOGERO, J., concurs.
LEMMON and HALL, JJ., concur in the result.