676 So.2d 799 (1996)
Huey P. THORNHILL, Jr.
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Marguerite M. Riley, and Allstate Insurance Company.
No. 95 CA 1950.
Court of Appeal of Louisiana, First Circuit.
June 28, 1996.
*802 Donald Price, Baton Rouge, for Marguerite Martin Riley.
Vincent J. Saitta, Lafayette, for John Ford.
Jerald Block, Thibodaux, for Earl Joseph Martin, Sr., Lloyd Martin, Thelma Martin Johnson, Barbara Martin Lewis, Brenda Martin and Larry Martin.
J. Michael Placer, Lafayette, for Huey P. Thornhill, Jr.
Ronald Vega, New Orleans, for Louisiana Ins. Guar. Ass'n.
Eugene G. Gouaux, Jr., Lockport, for Lucien Martin, Jr., Mary Johnson, and Beverly Vallain.
Nel F. Vezina, Andree Matherne Cullens, Gretna, for State of Louisiana, Dept. of Transp. and Development.
Kenneth R. Bowen, New Orleans, for Shelter Mut. Ins. Co.
Randall L. Bethancourt, Houma, for Allstate Ins. Co.
Before CARTER and PITCHER, JJ. and CRAIN,[1] J. Pro Tem.
In these consolidated tort actions, the State of Louisiana, through the Department of Transportation and Development (DOTD), appeals from a judgment of the trial court in favor of plaintiffs. Additionally, plaintiffs have answered the appeal, alleging that the trial court erred in assessing fault to a phantom tortfeasor. We amend and affirm.

FACTS AND PROCEDURAL HISTORY
These actions arose as a result of an automobile accident which occurred on the morning of January 14, 1989. Marguerite Riley picked up her mother, Rose Martin, to attend a funeral in Napoleonville, Louisiana. As the Riley vehicle traveled north on Highway 308, it approached an S-shaped curve in the road. According to Mrs. Riley, she observed a white vehicle traveling south on Highway 308 straddling the center line.[2] The actions of the white vehicle required Mrs. Riley to exit the road onto the shoulder. When Mrs. Riley attempted to re-enter the road, she lost control of the vehicle and collided with a Mazda truck traveling south on Highway 308. The truck was driven by Huey Thornhill, and John Ford was a passenger. As a result of this accident, Mrs. Riley, Mr. Thornhill and Mr. Ford were injured, and Rose Martin was killed.
On January 8, 1990, Mrs. Riley filed suit against DOTD under Docket Number 65286. Mrs. Riley alleged that DOTD was negligent in (1) failing to maintain a shoulder of adequate width in the S-shaped curve; (2) failing *803 to maintain the shoulder in the S-shaped curve in a safe condition for public travel; (3) failing to provide safe roads for the motoring public; (4) creating a defect or a hazard in the highway which was not apparent to drivers; (5) failing to adequately warn Mrs. Riley of the lack of defective road markings in the S-shaped curve; (6) failing to inspect the dangerous conditions on the highway and/or shoulder along the highway in the S-shaped curve, including but not limited to, failure to inspect for adequate warning signs; (7) failing to correct or repair dangerous conditions along the highway and/or shoulder of the highway in the S-shaped curve; and (8) other acts of negligence to be established at trial.
Earl Joseph Martin, Lloyd Martin, Larry Martin, Thelma Martin Johnson, Barbara Martin Lewis, Beverly Martin Vallain, and Brenda Martin, several of Rose Martin's children, also filed suit against DOTD, Mrs. Riley, and Alliance Casualty and Reinsurance Company (Alliance), Mrs. Riley's liability insurer under Docket Number 65287. The petition set forth the same allegations against DOTD as those made in Mrs. Riley's petition. Additionally, the petition alleged that Mrs. Riley was negligent in (1) failing to operate her vehicle within her designated lane of travel; (2) failing to maintain control of her vehicle; (3) failing to drive her vehicle at a speed appropriate under the circumstances; (4) failing to re-enter the traveled portion of the highway at a safe speed; (5) failing to re-enter the traveled portion of the highway in a safe manner; (6) failing to observe what she should have observed; and (7) failing to maintain a proper lookout for oncoming vehicles.
On January 12, 1990, Lucien Martin, Jr.,[3] and Mary Martin Johnson, two children of Rose Martin, filed a wrongful death action against DOTD under Docket Number 65324. The petition set forth the same allegations against DOTD as those made in Mrs. Riley's petition.
On January 12, 1990, John Ford filed suit against several defendants[4] including DOTD and Mrs. Riley under Docket Number 65325. Ford's petition set forth substantially the same allegations against DOTD and Mrs. Riley as had been made in other petitions filed.
Huey Thornhill filed suit against several defendants[5], including DOTD and Mrs. Riley, under Docket Number 65326. The petition alleged that DOTD and Mrs. Riley were negligent and/or strictly liable.
All of these actions were consolidated under Docket Number 64940, "Alliance Insurance Company Versus Huey Thornhill, John Ford, Marguerite Riley and the Estate of Rose Martin," on August 28, 1992.[6]
After a bench trial, the trial court found DOTD to be 75% at fault, Mrs. Riley to be 10% at fault, and the unidentified driver of the white vehicle to be 15% at fault. The trial court rendered a separate judgment for each action filed,[7] assessing damages and costs in each judgment.
DOTD has appealed, alleging the following assignments of error:
1.
The trial court erred in finding that the state is liable for Plaintiffs' damages because Plaintiffs failed to establish cause-in-fact, duty, defect, and legal cause or duty/risk which are necessary to prove liability.
2.
The trial court erred in failing to sustain DOTD's exception of lack of subject matter jurisdiction based on discretionary function immunity and separation of powers immunity.

*804 3.
The trial court erred in allocating the majority of fault in causing the accident to DOTD.
4.
The trial court erred in awarding one hundred fifty thousand dollars to each of the ten major children of a sixty-nine year old parent for the loss of the love and affection of that parent.
All of the plaintiffs have answered the appeal and allege that the trial court improperly assessed fault to the phantom driver. Additionally, Mr. Ford and Mr. Thornhill allege that fault was improperly assessed to Mrs. Riley.

FAULT OF THE PARTIES

DOTD'S ASSIGNMENT OF ERROR NUMBER ONE

DOTD
Through this assignment of error, DOTD contends that the trial court erred in finding it liable for plaintiffs' damages because plaintiffs failed to establish cause-in-fact, duty, defect, and legal cause or duty/risk necessary to prove liability.
Under a theory of negligence, liability hinges on whether the defendant has breached his duty to the plaintiff. Briggs v. Hartford Ins. Co., 532 So.2d 1154, 1156 (La. 1988). DOTD's duty to travelers is to keep the state's highways in a reasonably safe condition. LeBlanc v. State, 419 So.2d 853 (La.1982); Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). It is required to adopt minimum safety standards regarding highway design, construction, and maintenance [LSA-R.S. 48:35A(1)], conforming to the standards approved by the American Association of State Highway and Transportation Officials (AASHTO), whenever possible. Design standards both at the time of original construction and at the time of the accident may be relevant factors in determining whether a given stretch of roadway presents an unreasonable risk of harm, but are not determinative of the issue. Dill v. State, Department of Transportation and Development, 545 So.2d 994, 996 (La.1989).
Whether DOTD breached its duty, that is, whether the roadway at the scene of the accident was in an unreasonably dangerous condition, will depend on the facts and circumstances of each case. Hunter v. Department of Transportation and Development, 620 So.2d 1149, 1151 (La.1993).
For an appellate court to reverse a trial court's factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, the reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882.
The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Moreover, where two permissible views of the evidence exist, the factfinder's choice between them cannot be clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882-83.
Highway 308 is a two lane road classified by DOTD as a rural collector. The speed limit on Highway 308 is fifty-five miles per hour. The accident in question occurred in an S-shaped (or reverse) curve located on Highway 308. This curve has a posted advisory speed of thirty-five miles per hour.
*805 Mrs. Riley testified that she and her mother, Rose Martin, were on their way to a funeral in Napoleonville when the accident occurred. Mrs. Riley stated that she picked up her mother at about 8:30 a.m. The funeral was to start at 10:00 a.m. Mrs. Riley noted that it had rained the night before, and, on the morning of the accident, there was a light mist. Mrs. Riley testified that she first went towards Highway 1 but noticed traffic seemed to be congested, so she decided to cross over to Highway 308 because traffic was very light on that side of the highway. Mrs. Riley stated that, as she was approaching the curve on Highway 308, she noticed a white Cougar straddling the center line at the curve. Mrs. Riley noted that the white Cougar seemed to be halfway on her side of the road and halfway on his side of the road. Mrs. Riley stated that she decided to get on the shoulder of the road to let the white Cougar complete the curve. Mrs. Riley testified that, when she attempted to get back onto the road, she had no control of the car, and it started to slide. Mrs. Riley stated that the car seemed to be going in a circular motion. Mrs. Riley's vehicle then collided with the Mazda truck driven by Huey Thornhill. Mrs. Riley could not remember where she went off of the road or how far her car traveled before the point of impact. Mrs. Riley testified that she had traveled this curve for approximately twenty-five years and had not lost control of her vehicle before. Mrs. Riley estimated that she was traveling approximately forty-five to fifty-five miles per hour until she entered the curve. Mrs. Riley testified that she was traveling approximately thirty-five miles per hour when she hit the Mazda truck. Mrs. Riley stated that she did not remember where the white vehicle was in relationship to the curve. Mrs. Riley estimated that her right front wheels were two feet from the edge of the asphalt surface when she exited the road. Mrs. Riley testified that she removed her foot from the accelerator when she exited the road and did not apply her brakes. Mrs. Riley testified that the shoulder of the road seemed to have shells and some spots with grass, and it was hilly.
Huey Thornhill, the driver of the Mazda truck, was traveling southbound on Highway 308 when this accident occurred. Mr. Thornhill stated that the accident occurred after he had gone through the first half of the curve and was about to enter into the second half of the curve. Mr. Thornhill estimated that he was traveling at approximately thirty-three miles per hour. Mr. Thornhill noted that the road was wet. Mr. Thornhill stated that he never saw Mrs. Riley's vehicle before the collision. Mr. Thornhill also stated that he did not notice any cars traveling south in front of his truck before the accident occurred. Mr. Thornhill testified that, when he was in the curve, he could not see through the curve itself.
John Ford was a passenger in the Mazda truck and remembered little about the accident itself. Mr. Ford did not see a white car in front of the truck prior to the accident. Mr. Ford also stated that he could not see through the curve.
Trooper David Landry of the Louisiana State Police investigated the accident in question. Trooper Landry testified that he spoke briefly with Mrs. Riley at the scene of the accident. According to Trooper Landry, Mrs. Riley told him that there was a white vehicle that had run her onto the shoulder of the highway, causing her to lose control of her vehicle, cross the center line and strike the truck. Trooper Landry stated that Mrs. Riley did not tell him where the white vehicle was in the curve; however, Mrs. Riley told Trooper Landry she was traveling approximately fifty miles per hour before the accident. Trooper Landry testified that Mrs. Riley did not tell him how far off of the shoulder she traveled. Trooper Landry also spoke briefly with Mr. Ford who told him that, just before the impact, he saw the Riley vehicle. Trooper Landry testified that Mr. Ford did not remember seeing a white vehicle, although Trooper Landry admitted that the white vehicle would have been close to their truck. Trooper Landry stated that Mr. Thornhill told him he was traveling at approximately forty-five miles per hour before braking.
Trooper Landry testified that his investigation of the accident scene revealed no tire tracks just prior to the first curve, which *806 would be an indication that Mrs. Riley was run off of the highway. Trooper Landry noted that it was raining and observed water on the roadway, but observed "standing water" only in spots on side of the roadway. Trooper Landry estimated that the point of impact was in the center of the southbound lane, fifteen feet from the edge of the northbound lane. Trooper Landry testified that, at the point of impact, the road width was nineteen feet, nine inches, including the north and south travel lanes. Trooper Landry also described the shoulder of the road as being very narrow, made of gravel and overgrown with grass.
James Clary testified on behalf of plaintiffs as an expert in the field of civil engineering, highway design, highway safety, highway signage and land surveying. Mr. Clary first visited the accident site on February 15, 1989. Mr. Clary revisited the accident site on March 28, 1989 and did a survey; however, on this date, an overlay project of the road had already begun. Mr. Clary concluded that this section of Highway 308 posed an unreasonable risk of harm to the motoring public. Mr. Clary determined that, at the time of the accident, the road was deficient in several ways. Mr. Clary testified that, on the day of the accident, the width of the lanes was ten feet, rather than the twelve-foot width currently required by modern standards.[8] Mr. Clary also testified that the shoulder width varied from zero to two and one-half feet and, after the overlay, ranged from one-half to two and one-half feet. Mr. Clary stated that design standards required, at a minimum, an eight foot shoulder. Mr. Clary further noted that the minimum tolerable conditions would require a four foot shoulder width to prevent the shoulder from being critically deficient.[9] Mr. Clary testified that, in February of 1989, it appeared to him that the shoulders had not been properly maintained, observing that, in some areas, there were no shoulders, or the shoulders were heavily rutted. Mr. Clary further testified that some areas had lost the shoulder cross-section, and some of the shoulders went from the pavement directly down to the bottom of the ditch. Mr. Clary stated that, when he first visited the accident site, he observed the pavement to be in extremely poor condition, showing evidence of base failure and edge raveling. Mr. Clary also found the amount of superelevation[10] on the road to be deficient, noting that the superelevation was below the accepted standards even after the overlay. Mr. Clary testified that the degree of curvature in this road was too severe (approximately ten and one-half degrees, as compared to the eight degrees recommended under the minimal tolerable conditions and the six degrees recommended in 1945). Mr. Clary further noted that the road held water when it rained and also did not provide a clear roadside recovery zone for persons who leave the roadway.
Dr. Robert Ehrlich testified, on behalf of plaintiffs, as an expert in mechanical engineering, automotive engineering, vehicle dynamics and accident reconstruction. The opinion of Dr. Ehrlich was as follows:
Mrs. Riley, on entering the curve, saw a vehicle encroaching into her lane, swerved to the right to avoid the vehicle, dropped the right wheels off the shoulder. In her attempt to get back onto the highway, she steered very sharply, in order to get back onto the highway. When she got back on the highway, due to the angle of her wheels in attempting to get back on the highway, when they got up on the highway she took a sharp turn to the left, rotated counterclockwise. Presented the right *807 side of her vehicle to the Thornhill vehicle coming in the southbound lane.
... There was an impact in the southbound lane with the front of the Rileyof the Thornhill vehicle striking the right side of the Riley vehicle, about centered at the right passenger, front passenger door.
In support of this opinion, Dr. Ehrlich testified that the location of the impact of the two vehicles indicated that a driver, such as Mrs. Riley, would have trouble in a situation where the shoulder presented a height obstacle. Dr. Ehrlich testified that studies have shown that, in order for a driver to climb back onto the road, the driver would have to steer to the left, and the degree one would have to steer would depend upon the height of the obstacle and the driving conditions. According to Dr. Ehrlich, once the driver gets back on the road, the wheel is steered hard to the left, and the vehicle then takes a sharp turn to the left. Dr. Ehrlich stated that the ability to straighten out the vehicle would depend upon several factors, including the speed of the vehicle and the reaction of the driver. Dr. Ehrlich looked at photographs of this road and determined that the drop-off of the shoulder appeared to be between two and three inches. Dr. Ehrlich stated that, in wet conditions, it would be difficult for a driver to recover from this drop-off. Dr. Ehrlich also stated that the bumpy shoulder would contribute to the driver's ability to recover because there would be a problem getting traction to move over the shoulder drop-off. Dr. Ehrlich further testified that the width of the lanes contributed to Mrs. Riley's ability to recover because, if the lanes had been the standard twelve feet, she would not have gone off of the shoulder, noting that Mrs. Riley testified that she went about two feet off of the shoulder. Dr. Ehrlich also testified that the trough near the northbound lane, where there was standing water, would have further reduced Mrs. Riley's traction. Dr. Ehrlich also pointed out that the utility pole on the side of the road may have played a role in Mrs. Riley's actions. Dr. Ehrlich testified that the lack of superelevation would tend to make the phantom vehicle move to the left or encroach into the northbound lane. Dr. Ehrlich stated that, while at the accident site, he observed several vehicles "straighten out the curve." In response to questions posed by the trial court, Dr. Ehrlich testified that he could tell that Mrs. Riley did not enter the intersection at a high rate of speed and thus, was unable to negotiate the curve because she would have swung to the outside of the curve and entered the southbound lane at the first part of the curve, and there would have been a head-on collision. Dr. Ehrlich also stated that Mrs. Riley could not have entered the first curve at a high rate of speed, begin to fishtail, and then oversteer to the left in anticipation of the next curve, because Hondas, the type of car driven by Mrs. Riley, do not fishtail.
Dr. Olin Dart testified, on behalf of DOTD, as an expert in traffic engineering, highway design, traffic safety and accident reconstruction. Dr. Dart testified that, in his review of photographs taken at the scene of the accident, he saw no standing water and no serious rutting problems. Dr. Dart opined that the cause of this accident was the failure of Mrs. Riley to maintain control of her vehicle. Specifically, Dr. Dart testified that Mrs. Riley failed to properly negotiate the curve, lost control and slid into the opposing lane of traffic. Dr. Dart also stated that he performed a ball bank test on the curve in February of 1995 and determined that the safe speed of the curve was thirty-five miles per hour. Dr. Dart stated that, at the time of this accident, this curve could be safely driven when adhering to the advisory speed of the curve. Dr. Dart could not definitively state the speed that Mrs. Riley was traveling, only that she was traveling in excess of thirty-five miles per hour. Dr. Dart also noted that he observed no evidence which indicated that Mrs. Riley went on the shoulder of the road before impact.
Based upon the evidence before us, we find no manifest error in the trial court's finding that this section of Highway 308 was unreasonably dangerous. Thus, the finding of fault on the part of DOTD is correct.

MRS. RILEY
DOTD also contends that the actions of Mrs. Riley caused the accident in question. *808 Specifically, DOTD contends that the combination of Mrs. Riley's speed when entering the curve and the wet conditions caused Mrs. Riley to lose control of her vehicle.
A motorist's duty of reasonable care includes the duty to keep his vehicle under control. Sinitiere v. Lavergne, 391 So.2d at 826; Orillion v. Carter, 93-1190 p. 8 (La.App. 1st Cir. 6/24/94); 639 So.2d 461, 466, writs denied, 94-2289 (La. 11/18/94); 646 So.2d 384, 94-2272 (La. 11/18/94); 650 So.2d 240. Further, a motorist has a duty to maintain a proper lookout for hazards which, by the use of ordinary care and observation, he should be able to see in time to avoid running into them. Sinitiere v. Lavergne, 391 So.2d at 826; Orillion v. Carter, 639 So.2d at 466.
In concluding that this accident was caused, in part, by driver error, the trial court found that, although Mrs. Riley was driving under the speed limit on the road, she was driving over the advisory speed for the curve. The trial court noted that Mrs. Riley was familiar with this curve, having driven this highway on many other occasions. The trial court further noted that the road was wet; yet, Mrs. Riley did not think that she applied her brakes and lost control.
Based upon the evidence before us, we cannot say that the trial court's finding of fault as to Mrs. Riley is manifestly erroneous.
Therefore, this assignment of error is without merit.

DISCRETIONARY IMMUNITY

DOTD'S ASSIGNMENT OF ERROR NUMBER TWO
Through this assignment of error, DOTD contends that the trial court erred in failing to sustain the exception of lack of subject matter jurisdiction because DOTD is immune from liability under LSA-R.S. 9:2798.1.
LSA-R.S. 9:2798.1 provides immunity from liability for "public entities or employees based upon the exercise or performance or the failure to exercise or perform their policy-making or discretionary acts when such acts are within the course and scope of their lawful duties." The Louisiana Supreme Court has adopted a two-step test for determining when this exception applies. See Fowler v. Roberts, 556 So.2d 1, 15 (La. 1989) (citing Berkovitz by Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). First, a court must determine whether the action is a matter of choice. If no options are involved, the exception does not apply. If the action involves selection among alternatives, the court must determine whether the choice was policy based. Decisions at an operational level can be discretionary if based on policy. Rick v. State, Department of Transportation and Development, 93-1776, 93-1784 (La. 1/14/94); 630 So.2d 1271, 1276.
In support of its contention, DOTD relies upon LSA-R.S. 48:231[11] and 232[12], *809 respectively, and alleges that it could perform this construction project only if it appeared on the priority list. DOTD further alleges that only those projects approved by the legislature are put on the priority list. Thus, the legislature has final approval of what construction projects are to be performed by DOTD.
Additionally, DOTD submits that the trial court erred in determining that this section of Highway 308 had been selected for upgrading in 1985.[13] DOTD argues that, at a minimum, the only act toward upgrading this section of Highway 308 was not made until the project was assigned a project number in February of 1989, one month after this accident occurred. DOTD argues that the assignment of a project number does not constitute a decision to select a road for upgrade; only the legislature can make this decision.
After a review of the record, we determine that the trial court was correct in finding that the discretionary function exception was inapplicable to the present case. A reading of LSA-R.S. 48:231 and 232, respectively, reveals that it is DOTD who initially furnishes a priority list of projects from which the legislature ultimately chooses which projects are to be funded. The record clearly establishes that the realignment of this section of Highway 308 was never submitted by DOTD for consideration as a priority. Therefore, this assignment of error is without merit.

QUANTIFICATION OF FAULT

DOTD'S ASSIGNMENT OF ERROR NUMBER THREE

PLAINTIFFS' ANSWER TO APPEAL
Through Assignment of Error Number Three, DOTD contends that the trial court erred in its allocation of fault. Additionally, all of the plaintiffs filed an answer to the appeal and alleged that the trial court had improperly allocated fault to the unidentified driver of the white vehicle.
In Cavalier v. Cain's Hydrostatic Testing, Inc., 94-1496, p. 10 (La. 6/30/95); 657 So.2d 975, 982, the Louisiana Supreme Court concluded that the quantification of fault of a person that no party sees fit to join in the suit as a defendant or a third party defendant is not required unless there is a compelling reason, such as in the case of a settling tortfeasor or a non-party whose negligence is imputable to a party.[14]
*810 Based upon Cavalier v. Cain's Hydrostatic Testing, Inc., we find that the trial court erred in assigning fault to the unidentified driver of the white vehicle, a party who was not joined in the present actions. Thus, that percentage of fault must be disregarded. Cavalier v. Cain's Hydrostatic Testing, Inc., 657 So.2d at 984; Guidry v. Frank Guidry Oil Co., 579 So.2d 947, 954 (La.1991)[15]. Therefore, this court must first determine if the degrees of fault assessed to Riley and DOTD are correct. This court must then apportion the total fault between Riley and DOTD using a ratio approach. See Guidry v. Frank Guidry Oil Co., 579 So.2d at 954, and the authorities cited therein.
It is well settled that the allocation of comparative negligence is a factual matter within the sound discretion of the trial court, and such determination will not be disturbed on appeal in the absence of manifest error. Daigle v. Legendre, 619 So.2d 836, 839-840 (La.App. 1st Cir.), writ denied, 625 So.2d 1040 (La.1993).
The Louisiana Supreme Court, in Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La.1985), set forth the guidelines for apportioning fault under the doctrine of comparative negligence. The court, quoting § 2(b) of the Uniform Comparative Fault Act, stated the following:
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d at 974.
In assessing the nature of the conduct of the parties, the court listed various factors which may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d at 974.
After considering the evidence and the Watson factors, we conclude that the trial court's apportionment of 75% fault to DOTD and 10% fault to Riley was not manifestly erroneous. Therefore, using the ratio approach, the 15% of fault erroneously assessed to the unidentified driver of the white vehicle is to be reassessed as follows: 13.24% to DOTD and 1.76% to Riley.

DAMAGES

DOTD'S ASSIGNMENT OF ERROR NUMBER FOUR
DOTD contends that the trial court erred in awarding the amount of $150,000.00 to each of the ten major children of their sixty-nine year old mother, Rose Martin. DOTD argues that the awards were excessive in light of the children's age, the children's relationship with their mother, and the fact that they suffered only the normal sorrow and unhappiness associated with an elderly parent's death.
The discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime *811 Overseas Corporation, et al., 623 So.2d 1257, 1260 (La.1993), cert. denied 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corporation, et al., 623 So.2d at 1261.
Following the standard enunciated in Youn v. Maritime Overseas Corporation, et al., we cannot say that the trial judge abused his discretion in fixing the awards of general damages. Although many rational triers of fact could have decided that lower awards were more appropriate, we cannot conclude from the entirety of the evidence in this record, viewed in the light most favorable to the prevailing party in the trial court, that a rational trier of fact could not have fixed the awards of general damages at the level set by the trial court or that this is one of those "exceptional cases where such awards are so gross as to be contrary to right reason." Youn v. Maritime Overseas Corporation, et al., 623 So.2d at 1261. Thus, this assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court, rendered under Docket Numbers 65325, 65326, 65286, 65287 and 65324, finding the unidentified driver of the white vehicle to be 15% at fault, is reversed, and the defendant, State of Louisiana, through the Department of Transportation and Development, is hereby found to be 88.24% at fault, and Marguerite Riley is hereby found to be 11.76% at fault.
The judgment of the trial court, rendered under Docket Number 65325, is amended as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, JOHN FORD, and against the defendant, STATE OF LOUISIANA THROUGH THE DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, in the full sum of 88.24% of TWO HUNDRED FIFTY-SIX THOUSAND TWO HUNDRED TWENTY-SEVEN AND 41/100 ($256,227.41) DOLLARS together with legal interest from the date of judicial demand until paid in full.
The judgment of the trial court, rendered under Docket Number 65326, is amended as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, HUEY THORNHILL, and against the defendant, STATE OF LOUISIANA THROUGH THE DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, in the full sum of 88.24% of TWENTY-FOUR THOUSAND TWO HUNDRED SIXTEEN AND 80/100 ($24,216.80) DOLLARS together with legal interest from the date of judicial demand until paid in full.
The judgment of the trial court, rendered under Docket Number 65286, is amended as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, MARGUERITE MARTIN RILEY, and against the defendant, STATE OF LOUISIANA THROUGH THE DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, in the full sum of 88.24% of TWO HUNDRED EIGHTY-ONE THOUSAND FIFTY-NINE AND 62/100 ($281,059.62) DOLLARS together with legal interest from the date of judicial demand until paid.
The judgment of the trial court, rendered under Docket Numbers 65287 and 65324, is amended as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiffs, BARBARA MARTIN LEWIS, LARRY MARTIN, EARL JOSEPH MARTIN, THELMA MARTIN JOHNSON, BRENDA MARTIN, LLOYD MARTIN, LUCIEN MARTIN, JR., MARY MARTIN JOHNSON AND BEVERLY MARTIN VALLIAN, and against the defendant, STATE OF LOUISIANA THROUGH THE DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, in the full sum of 88.24% of the following amounts: *812 BARBARA MARTIN LEWISONE HUNDRED FIFTY THOUSAND FOUR HUNDRED EIGHTY-FOUR AND 75/100 ($150,484.75) DOLLARS; LARRY MARTINONE HUNDRED FIFTY THOUSAND FOUR HUNDRED EIGHTY-FOUR AND 75/100 ($150,484.75) DOLLARS; EARL JOSEPH MARTINONE HUNDRED FIFTY THOUSAND FOUR HUNDRED EIGHTY-FOUR AND 75/100 ($150,484.75) DOLLARS; THELMA MARTIN JOHNSONONE HUNDRED FIFTY THOUSAND FOUR HUNDRED EIGHTY-FOUR AND 75/100 ($150,484.75) DOLLARS; BRENDA MARTINONE HUNDRED FIFTY THOUSAND FOUR HUNDRED EIGHTY-FOUR AND 75/100 ($150,484.75) DOLLARS; LLOYD MARTINONE HUNDRED FIFTY THOUSAND FOUR HUNDRED EIGHTY-FOUR AND 75/100 ($150,484.75) DOLLARS; LUCIEN MARTIN, JR.ONE HUNDRED FIFTY THOUSAND FOUR HUNDRED EIGHTY-FOUR AND 75/100 ($150,484.75) DOLLARS; MARY MARTIN JOHNSONONE HUNDRED FIFTY THOUSAND FOUR HUNDRED EIGHTY-FOUR AND 75/100 ($150,484.75) DOLLARS; BEVERLY MARTIN VALLIANONE HUNDRED FIFTY THOUSAND FOUR HUNDRED EIGHTY-FOUR AND 75/100 ($150,484.75) DOLLARS together with legal interest from the date of judicial demand until paid in full.
In all other respects, the judgments of the trial court, rendered under Docket Numbers 65325, 65326, 65286, 65287 and 65324, are affirmed.
Costs of the appeal, under Docket Number 65286, in the amount of $2,005.80, are assessed equally to defendant, State of Louisiana through the Department of Transportation and Development, and plaintiff, Marguerite Riley.
Costs of the appeal, under Docket Numbers 65287 and 65324, in the amount of $1,666.40 and $704.75 respectively, are assessed equally to defendant, State of Louisiana through the Department of Transportation and Development, and plaintiffs, Barbara Martin Lewis, Larry Martin, Earl Joseph Martin, Thelma Martin Johnson, Brenda Martin, Lloyd Martin, Lucien Martin, Jr., Mary Martin Johnson, and Beverly Martin Vallain.
Costs of the appeal, under Docket Number 65325, in the amount of $987.50, are assessed equally to defendant, State of Louisiana through the Department of Transportation and Development, and plaintiff, John Ford.
Costs of the appeal, under Docket Number 65326, in the amount of $2,333.75, are assessed equally to defendant, State of Louisiana through the Department of Transportation and Development, and plaintiff, Huey Thornhill.
REVERSED IN PART, AND, AS AMENDED, AFFIRMED IN PART.
NOTES
[1] Judge Hillary J. Crain, retired, served as judge pro tempore by special appointment of the Louisiana Supreme Court. Due to the appointment of Judge Hillary J. Crain as Chairman of the Louisiana Gaming Control Board prior to rendition, but after his concurrence therein, this opinion is rendered unanimously by Carter and Pitcher, JJ. See A Second Mortgage Company of Baton Rouge, Inc. v. Gatlin, 233 So.2d 583 (La.App. 1st Cir. 1970).
[2] Mrs. Riley testified that this vehicle was a Cougar.
[3] We note that Lucien Martin, Jr., was also named as a plaintiff in the suit filed under Docket Number 65287.
[4] The remaining defendants are not parties to the present appeal.
[5] The remaining defendant is not a party to this appeal.
[6] The action filed under Docket Number 64940 was a concursus proceeding instituted by Alliance.
[7] We note that one judgment was issued for the actions filed under Docket Numbers 65287 and 65324.
[8] During his testimony, Mr. Clary referred to the standards approved by the American Association of State Highway and Transportation Officials (AASHTO).
[9] According to Mr. Clary, a minimum tolerable condition is separate from the design standards promulgated by AASHTO. Mr. Clary testified that DOTD uses the minimum tolerable condition approach as a guide in grading the highway system and determining which roads to place in the construction program. Mr. Clary further testified that DOTD used safety research performed by AASHTO and various research committees in determining what the minimum tolerable conditions should be.
[10] According to Mr. Clary, the superelevation is the tilt of the road in the curve which assists a driver in going around the curve. The superelevation is determined by the design speed in the road and by the degree of sharpness of the curve.
[11] LSA-R.S. 48:231 provides as follows:

Prior to the convening of each regular session of the legislature, the department shall furnish the priority list to the Joint Legislative Committee on Transportation, Highways, and Public Works, which shall hold public hearings in each highway district for the purpose of reviewing priorities for the coming fiscal year. A report based on the testimony received at said hearings shall be made to the Department of Transportation and Development. The department then shall prepare the final construction program for the coming fiscal year for submission to the legislature. When this final construction program is presented to the legislature for funding for the coming fiscal year, any project which the legislature determines is not in the proper order of priority in accordance with the factors stated in R.S. 48:229 may be deleted by the legislature. However, the legislature shall not add any projects to this final construction program, nor shall the legislature make substitutions for projects which have been removed.
[12] LSA-R.S. 48:232 provides as follows:

No construction project shall be undertaken by the Department of Transportation and Development except those included in the priority listing for that fiscal year regardless of the source of the funds for the project, with the exception of projects undertaken and financed out of the secretary's emergency fund and projects involving the use of matching funds to meet federal requirements in order to receive federal aid funds. Appropriations for highway construction shall be apportioned by the department to the several highway classifications based on the proportion that the needs in each classification bears to the total needs and shall be allocated by the department to the projects within each classification. Semiannually the secretary shall submit to the Joint Legislative Committee on Transportation, Highways, and Public Works a recapitulation of all emergency projects for the preceding six-month period, outlining the nature and cost of the emergency.
[13] The record reflects that, during a pre-design inspection report for an overlay project involving Highway 308, DOTD recognized that this curve needed to be realigned. This report was dated August 5, 1985.
[14] In reaching this conclusion, the Louisiana Supreme Court expressly overruled its holding in Gauthier v. O'Brien, 618 So.2d 825 (La.1993), that quantification of employer fault either is suggested by LSA-C.C.P. art. 1812C or is made mandatory by LSA-C.C. art. 2324B.

In the 1996 extraordinary legislative session, the legislature enacted Act 3, effective April 16, 1996, amending LSA-C.C. art. 2323 to provide as follows:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.
LSA-C.C. art. 2324B was also amended to provide as follows:
B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.
We construe the amendments to LSA-C.C. arts. 2323 and 2324 to be substantive, and, therefore, should be applied prospectively only. See Manuel v. Louisiana Sheriff's Risk Management Fund, 95-0406, p. 8 (La. 11/27/95); 664 So.2d 81, 86.
[15] We note that Guidry v. Frank Guidry Oil Co., 579 So.2d 947 (La.1991), was expressly overruled by Gauthier v. O'Brien, 618 So.2d 825 (La.1993), but was reinstated in Cavalier v. Cain's Hydrostatic Testing, Inc., 94-1496, p. 9 (La. 6/30/95); 657 So.2d at 981.