694 So.2d 180 (1997)
Floyd KEITH, et ux.
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, et al.
No. 96-CC-2075.
Supreme Court of Louisiana.
May 9, 1997.
Rehearing Denied June 13, 1997.
Larry Alan Stewart, Andrew Parker Texada, Stafford, Stewart & Potter, Alexandria, for Applicant.
*181 Daniel E. Broussard, Broussard, Bolton, Halcomb & Vizzier, Alexandria, for Respondent.
KNOLL, Justice.[*]
This litigation involves an action to recover damages for injuries Floyd H. Keith (Keith) suffered in an oilfield accident on February 27, 1991, while he was employed with K & D Well Service (K & D) as a floor hand on a land based drilling rig. Keith and his wife sued Blaney's Oilfield Specialty, Inc. and/or Blaney's Oilfield Supply, Inc. (Blaney), the lessor/owner of a set of slips in use at the time of the accident, and its liability insurer, United States Fidelity & Guaranty Company (USF & G), alleging that the accident was caused by Blaney's fault, negligence, and strict liability in furnishing K & D with defective, worn, and dangerous rental equipment.
Blaney and USF & G answered, denying liability and affirmatively pleading that the accident was caused by the fault of Keith and his co-employees. Subsequently, they supplemented their answer to plead the fault of Keith's employer, K & D, as an affirmative defense to the action. In particular, they stated:
In the alternative, defendants, allege that the accident complained of herein occurred as a result of the negligence and fault of plaintiff's employer, K & D Well Service, in the following nonexclusive particulars:
a) Failing to inspect equipment before putting it in use;
b) Failing to apply the proper lubrication prior to putting the product in use and while using the product;
c) Failing to keep the product clean;
d) Failing to employ a chain, safety clamp or other similar safety devices;
e) Continuing to use the equipment after they knew or should have known that the equipment was slipping;
f) Failing to repair the equipment or request it to be repaired or replaced.
Keith, relying on Cavalier v. Cain's Hydrostatic Testing, Inc., 94-1496 (La.6/30/95); 657 So.2d 975, responded by filing a motion to strike the allegation that the accident was caused by the fault of Keith's employer, K & D.
After hearing oral argument, the trial court granted Keith's motion to strike. Thereafter, Blaney and USF & G unsuccessfully sought a supervisory writ from the Louisiana Court of Appeal, Third Circuit.[1] On application of Blaney and USF & G, we granted supervisory writs[2] to consider the correctness of the lower courts' rulings and to further consider the continued efficacy of Cavalier in light of the 1996 legislative amendments regarding the quantification of employer fault in third-party tort litigation. We reverse, finding that those provisions applicable to the quantification of employer fault found in Act 3 of the First Extraordinary Session of 1996 are applicable retroactively, and remand.
The quantification of employer fault in third-party tort litigation has indeed been marked by differences of opinion among us, and is best reflected in our differing, scholarly treatments of the issue between 1991 and the present. In Guidry v. Frank Guidry Oil Co., 579 So.2d 947 (La.1991), and the companion case of Melton v. General Electric Co., 579 So.2d 448 (La.1991), we held that the worker's compensation principle made the concept of employer fault excludable in tort actions against third-party tortfeasors. Shortly thereafter, in Gauthier v. O'Brien, 618 So.2d 825 (La.1993), we overruled Guidry and Melton, and determined that La. Code Civ.P. art. 2324(B) mandated the quantification of employer fault. Finally, in Cavalier, 657 So.2d 975, our most recent pronouncement on the issue, we revisited Gauthier, rejected its holding, and reinstated our determination in Guidry and Melton that excluded the quantification of employer fault.
When Cavalier overruled Gauthier, we focused on the lack of legislative intent on the *182 quantification of employer fault, focusing specifically on the provisions of La.Code Civ.P. art. 1812(C) and La.Civ.Code art. 2324(B). We determined that the Legislature had not specified which parties should have their fault quantified as directed in Article 1812(C). Cavalier, 657 So.2d at 980-981. We likewise held that the mention in the last sentence of Article 2324(B) of a joint tortfeasor's "immunity" was "not indicative of a legislative intent to make quantification of employer fault mandatory." Id. at 984.
Although we decided Cavalier in June of 1995, Cavalier was not the last treatment of employer fault in third-party tort actions. Rather, shortly thereafter in an Extraordinary Session of the Legislature in early 1996, the Legislature specifically addressed this issue. In the 1996 Extraordinary Legislative Session, the Legislature enacted Act 3, approved April 16, 1996, amending La.Civ. Code. art. 2323 to provide as follows:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.
With this clear pronouncement from the Legislature on the heels of Cavalier, it is clear that the holdings in Cavalier are no longer applicable as to the quantification of fault "of all persons causing or contributing to the injury, death, or loss ... regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable." We must now decide whether this legislative enactment is applicable retroactively or prospectively.

APPLICATION OF LEGISLATIVE ACT 3
Blaney and USF & G contend that Acts 3's amendment to La.Civ.Code art. 2323 in the First Extraordinary Session of 1996 was procedural, remedial, or interpretive; thus, this Act should be applied retroactively. In opposition, Keith contends that this portion of the Act was substantive and should only be applied prospectively.
Comparing La.Civ.Code art. 2323, as amended, to its predecessor, it is apparent that the basic structure for comparative fault is unchanged. However, we observe that the Legislature added more specific language to Art. 2323 making it mandatory for the determination of the percentage of fault of all persons contributing to an injury, whether those persons are unidentified non-parties, statutorily immune employers, or others.
Having reviewed this act of the First Extraordinary Session of the 1996 Legislature, it is evident that the Legislature met the concerns we expressed in Cavalier regarding how it intended that employer fault be treated in third-party tort actions. Notwithstanding, the act did not express whether it intended that the amendment to La.Civ.Code art. 2323 be given retrospective or prospective application.
The general rule against retroactive application of legislative enactments and its exceptions, is codified in La.Civ.Code. art. 6. *183 Cole v. Celotex Corp., 599 So.2d 1058 (La. 1992). Article 6 provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
Additionally, La.R.S. 1:2 provides that no statute is retroactive unless it is expressly so stated. Unlike La.Civ.Code art. 6, La.R.S. 1:2 does not distinguish between substantive, procedural and interpretive laws. However, the jurisprudence has generally construed the two provisions as being co-extensive. See Manuel v. La. Sheriff's Risk Mgmt. Fund, 95-406 (La.11/27/95); 664 So.2d 81; St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809 (La.1992).
Article 6 requires a two-fold inquiry. First, we must ascertain whether the enactment expresses legislative intent regarding retrospective or prospective application. If such intent is expressed, the inquiry ends unless the enactment impairs contractual obligations or vested rights. If no such intent is expressed, the enactment must be classified as either substantive, procedural or interpretive. St. Paul Fire & Marine Ins. Co., 609 So.2d at 816; Cole, 599 So.2d at 1063. It is well accepted that substantive laws either establish new rules, rights, and duties or change existing ones, while interpretive laws merely establish the meaning the statute had from the time of its enactment. St. Paul Fire & Marine Ins. Co., 609 So.2d at 817. Procedural laws prescribe a method for enforcing a previously existing substantive right and relate to the form of the proceeding or the operation of the laws. 19 Segura v. Frank, 93-1271, 93-1401 (La.1/14/94); 630 So.2d 714. Nonetheless, since the application of legislative enactments has constitutional implications under the due process and contract clauses of both the United States and Louisiana Constitutions, even where the Legislature has expressed its intent to give a substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual obligations or disturb vested rights. Id.
As we pointed out hereinabove, Act 3 contains no clear and unmistakable expression of legislative intent regarding retrospective application. After noting this lack of express legislative intent, two appellate court cases from the Court of Appeal, First Circuit, have considered the retroactivity of Act 3. Moore v. Safeway, Inc., 95-1552, 1996 WL 684184, ___ So.2d ___ (La.App. 1 Cir. 11/22/96); Thornhill v. State, Dept. of Transp. & Dev., 95-1950 (La.App. 1 Cir. 6/28/96); 676 So.2d 799. In Moore, the appellate court declined to express an opinion regarding the amendments to La.Civ.Code art. 2323, but stated that the amendments to La.Civ.Code art. 2324, the other codal article included in Act 3, were substantive and had prospective application only. In Thornhill, another panel from the First Circuit construed Act 3's amendments to La.Civ.Code arts. 2323 and 2324 as substantive and applied them prospectively only.
After carefully considering Act 3, we find that the legislative amendment of La. Civ.Code arts. 2323 was procedural legislation. Act 431 of 1979 amended and reenacted La.Civ.Code arts. 2103, 2323, and 2324 to usher a comparative fault system into Louisiana. This act eliminated the doctrine of contributory negligence and provided the framework for a comprehensive scheme of loss apportionment in multi-party litigation. Cole, 599 So.2d 1058. Since the adoption of a pure comparative fault system, it has been the task of the factfinder to allocate shares of negligence. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991).
Viewing the applicability of Act 3 to the case sub judice, it is clear that the substantive right to allocate fault was created in 1979 with the introduction of comparative fault. As such, Act 3 simply delineates a method for enforcing that substantive right as particularly applied to the statutory employer.
Accordingly, we conclude that the legislative changes reflected in Act 3 are procedural, and can be applied retroactively. Thus, we find that employer fault must be quantified in the present case, as indicated in conformity with the amendment to La.Civ.Code art. 2323. Accordingly, we find that the trial court and court of appeal erred in ordering *184 Blaney and USF & G to strike the allegations of employer fault from their answer.
For the reasons assigned, the judgments of the trial court and the court of appeal are reversed and this case is remanded for further proceedings in accordance herewith.
REVERSED AND REMANDED.
CALOGERO, C.J., concurs and assigns reasons.
CALOGERO, Chief Justice, concurring.
I agree with the majority that the 1996 legislative amendment of Civil Code article 2323 effected only a procedural change to the article, thereby permitting the amended article to be applied retroactively in this case, which has not yet been tried. I write separately, however, to emphasize that the retroactive application of article 2323 to the instant case will accomplish nothing more than permitting the quantification of the statutorily immune employer's fault, if any. The issue of whether the quantification of the employer's fault can be used to reduce the amount that plaintiff may recover from other non-immune defendants is reserved for another day, when we might address a case where a statutorily immune employer has been found, after trial on the merits, to be partially at fault for a plaintiff-employee's injuries. For these reasons, I respectfully concur.
NOTES
[*] Lemmon, J. not on panel. Rule IV, Part 2 § 3.
[1] W96-588 (La.App. 3 Cir. 7/11/96), an unpublished writ ruling of the Louisiana Court of Appeal, Third Circuit.
[2] No. 96-CC-2075 (La.11/15/96); 682 So.2d 745.