708 So.2d 749 (1998)
Sandra JONES, et al., Plaintiffs-Appellants,
v.
Floyd HAWKINS, Jr., et al., Defendants-Appellees.
No. 29914-CA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1998.
Order Amending Decision on Rehearing April 9, 1998.
*752 Richard Michael John, Shreveport, for Plaintiffs-Appellants.
Ramona N. Wallis, and John Chris Turnage, Shreveport, for Defendants-Appellees.
John S. Stephens, Shreveport, for Third Party-Appellee.
Before MARVIN, C.J., and NORRIS, BROWN, WILLIAMS and CARAWAY, JJ.
NORRIS, Judge.
The plaintiffs, Sandra Jones and Randolph Willis, appeal a judgment rejecting their claim for personal injuries to their six-yearold son, Terrance, who was involved in a bicycle-automobile collision. Finding manifest error in the District Court's determination that a visually obstructed corner did not pose an unreasonable risk of harm, we affirm in part, reverse in part and render judgment against the City of Shreveport and T.C. and Cleo Alexander.

Factual and procedural background
Terrance Jones, age six, was injured at the corner of Calhoun and Chester Streets in the Allendale Subdivision of Shreveport. Calhoun Street runs north and south, and makes a steep downward slope before forming a "T" intersection with Chester. There was no stop sign at the end of Calhoun. A house at the southeast of the intersection, owned by T.C. and Cleo Alexander, had a chain-link fence some three or four feet from the edge of the blacktop street; behind the fence were trees and shrubs which were overgrown and protruded from behind the fence to nearly the edge of the road. Witnesses testified that the foliage made it difficult for a driver going west on Chester to see anyone coming north on Calhoun; this overgrown condition had existed for many years.
On a Sunday afternoon in July, Terrance was riding his bicycle north on Calhoun when he came to Chester Street; he apparently attempted to turn right, but overshot his turn. At that moment a car driven by Floyd Hawkins Jr. was driving west on Chester. According to Hawkins, he could not see *753 around the overgrown corner and had no idea that there was a child on a bike until, when the car was only 15' from the intersection, Terrance suddenly appeared from behind the foliage. Hawkins was driving rather slowly, about 15-20 m.p.h., and swerved to the right to avoid the collision, but it was too late. Terrance struck the left front of Hawkins's car; the impact tossed him to the middle of the road. Hawkins pulled Terrance into some shade while waiting for EMS to arrive.
Terrance's mother, Sandra Jones, and his father, Randolph Willis,[1] filed this suit against Floyd Hawkins Jr. and his insurer, Safeco; against the City of Shreveport; and against T.C. and Cleo Alexander, the owners of the corner lot. The city cross claimed T.C. and Cleo Alexander for indemnity or contribution. The city also urged as a defense that it had no actual or constructive notice of any defect at the intersection, as required by La. R.S. 9:2800. The plaintiffs amended their petition to allege that R.S. 9:2800 is unconstitutional, as it conflicted with the waiver of sovereign immunity of La. Const. Art. 12, § 10(A).
The matter proceeded to jury trial in June 1996. The jury found that no defendant was at fault. Subsequently the District Court rendered judgment in favor of the city, finding insufficient evidence of constructive notice of a defect as required by R.S. 9:2800. Judgment was rendered in favor of all defendants and against the plaintiffs, rejecting their demands. The plaintiffs now appeal.

Applicable law
Strict liability is imposed on the person or entity who has the care, custody and control of a thing which is defective, presents an unreasonable risk of harm, and actually causes damage to another person. La. C.C. art. 2317; Entrevia v. Hood, 427 So.2d 1146 (La.1983). The determination of whether a thing presents an unreasonable risk of harm should be made "in light of all relevant moral, economic and social considerations." Celestine v. Union Oil Co. of California, 94-1868 (La.4/10/95), 652 So.2d 1299. The city has a duty to maintain its streets in a reasonably safe condition for use by the public. Lutz v. City of Shreveport, 25,801 (La.App.2d Cir. 5/4/94), 637 So.2d 636, writ denied 94-1487 (La.9/23/94), 642 So.2d 1294. Overgrown foliage that obstructs the right of way may constitute a defect in the road. Briggs v. Hartford Ins. Co., 532 So.2d 1154 (La.1988); Holt v. State, 28,183 (La.App.2d Cir. 4/3/96), 671 So.2d 1164, writ denied 96-1132 (La.6/21/96), 675 So.2d 1080.[2] The city, however, cannot be liable for damages resulting from the defective condition without proof that it had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and that the city had a reasonable opportunity to remedy the defect but failed to do so. La. R.S. 9:2800 B; Campbell v. Louisiana Dept. of Transp. & Dev., 94-1052 (La.1/17/95), 648 So.2d 898; Summerall v. Ouachita Parish School Bd., 27,643 (La.App.2d Cir. 12/8/95), 665 So.2d 734.
The city may also be found negligent under La. C.C. art. 2315 if the plaintiff shows that a hazardous condition existed, that the city was actually or constructively aware of it, and failed to take corrective action within a reasonable time. Briggs v. Hartford, supra. The city is held to a standard of reasonable prudence and care in discovering hazards. Id. The city's duty is the same, whether analyzed as strict liability or as negligence. Id.; Myers v. State Farm Mut. Auto. Ins. Co., 493 So.2d 1170 (La. 1986).
A motorist who sees a child on a bike ahead is held to a very high standard of care, as the child's actions may be sudden and unpredictable. Buckley v. Exxon Corp., 390 So.2d 512 (La.1980); Rhodes v. Executive Risk Consultants, 26,021 (La.App.2d Cir. 8/17/94), 642 So.2d 269.[3] However, when the *754 driver employs all reasonable precaution to avoid an accident and the child's sudden act creates an emergency rendering it impossible for the motorist to avoid striking the child, the accident is considered unavoidable and the motorist is not at fault. Moore v. State Farm, 499 So.2d 146 (La.App. 2d Cir. 1986), and citations therein.
A parent is required to use reasonable precautions in supervising his or her child. Smolinski v. Taulli, 276 So.2d 286, 287 (La.1973); McFarland v. Industrial Helicopters Inc., 502 So.2d 593 (La.App. 3d Cir. 1987); Wilson v. United States, 92-455 (M.D.La.1/13/95), 874 F.Supp. 128; cf. Anderson v. NOPSI, 583 So.2d 829 (La.1991). Failure to take precautions expected of a reasonably prudent person in similar circumstances subjects the parent to comparative fault. Wilson v. United States, supra.
The trial court's factual findings are reviewed by the manifest error rule: in order to reverse, the appellate court must find (1) a reasonable factual basis does not exist for the trial court's finding, and (2) that finding is clearly wrong. Mart v. Hill, 505 So.2d 1120 (La.1987). If there are two permissible views of the evidence, the fact finder's choice between them can virtually never be manifestly erroneous or plainly wrong. Lewis v. State, 94-2370 (La.4/21/95), 654 So.2d 311, and citations therein.

Discussion: Liability of the City
By their sixth and seventh assignments of error the appellants urge the District Court erred in failing to hold the City of Shreveport negligent or strictly liable. Specifically they contend the city failed to install traffic control devices of any kind at the intersection, especially one to warn oncoming cars that children may be present, and failed to keep the right of way clear of vegetation. They also contest the District Court's "judgment with reasons" which stated that the city lacked actual or constructive notice that there was no stop sign on Calhoun Street.
At the outset we observe that the District Court was plainly wrong to find no actual or constructive notice. Kevin Woodard, the city's traffic engineer, testified that the intersection was regulated by an advisory speed limit, and curve and chevron signs on Chester. Both he and the appellants' expert, Mr. Evans, a traffic engineer and accident reconstructionist, testified that there was no ordinance mandating a stop sign at the corner; it was a matter for the traffic engineer's discretion. Timothy Walsh Jr., superintendent of streets and drainage, and Bobby DeBose, chief of code enforcement, both testified that city workers had been in the area to repair potholes and shoulders on several occasions. Police regularly patrol the area. Both Mr. Walsh and Mr. Woodard admitted the city has no procedure for examining the streets. This evidence makes the finding of no actual or constructive notice of conditions there untenable and plainly wrong. Mart v. Hill, supra.
We have closely reviewed the evidence regarding the overall condition of the intersection. The witnesses were in complete agreement that the right of way around the corner was heavily overgrown. The appellants, Willis and Jones, both stated that vegetation at least partially obstructed the view up Calhoun Street from Chester. Hawkins testified simply that the foliage blocked his view of Calhoun Street. Officer Talliaferro, who investigated the accident, recalled that the corner had "heavy vegetation growth,"[4] and Mr. Woodard conceded there were "some vision obscurements there." Hawkins's insurance adjuster took photos of the intersection three days after the accident; these were admitted as Exhibit P-3. They depict a very substantial amount of overgrowth, casting deep shadows about the area and blocking the view around the corner except for occasional patches. Mr. Evans, commenting on these photos, found "to some degree a sight obstruction formed by vegetation," and considered it "a serious problem."
Compounding the problem of the thick vegetation was the absence of any stop or yield sign at the foot of Calhoun Street. *755 The record establishes that placement of such a sign at this intersection is discretionary; it depends on traffic volume, sight distance and accident history. Mr. Woodard; the traffic engineer, stated that "the safest thing is for motorists to look out for each other" at this intersection. In view of the city's reliance on defensive driving as a safety device here, we consider it a breach of duty not to provide a reasonably clear field of vision. Mr. Evans did not actually reconstruct the accident, but testified that a driver going west on Chester needed 250' of sight distance to enter the intersection safely; with the view obstructed, he estimated this corner provided only 140' of sight distance. The clear implication was that given the fairly low speeds of both Hawkins's car and Terrance's bike, the additional 110' of sight distance would likely have enabled Hawkins to see the child on the bicycle and stop before colliding with him.[5]
The city has a duty to maintain its streets and rights of way in a reasonably safe condition for use by the public. Lutz v. City of Shreveport, supra. In view of the unanimous testimony of the parties, the city traffic engineer, the images in the photos, and the uncontradicted expert opinion of Mr. Evans, we conclude that the District Court was plainly wrong to find that the intersection did not pose an unreasonable risk of harm. Moreover, the extensive and lush appearance of the overgrowth indicates it was a condition of long standing; Willis stated the corner had been that way "for years." With the testimony that city employees were periodically in the area to perform duties and repairs, the record presents facts "which infer actual knowledge." R.S. 9:2800 C; Boddie v. State, 27,313 (La.App.2d Cir. 9/27/95), 661 So.2d 617. The absence of any program on the city's part to inspect and discover the condition also implies knowledge. St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (1964). Finally, we find the evidence, particularly Mr. Evans's expert testimony, establishes that clearing the right of way would, more probably than not, have prevented this accident. We therefore will reverse the judgment insofar as it absolved the city of liability.

Liability of the other defendants
By their first, third, fourth and fifth assignments of error the appellants contend the jury committed manifest error in failing to find Hawkins at fault. They argue that Hawkins admittedly knew the area of Chester and Calhoun was frequented by children and obscured by foliage; thus he should have used even greater caution to avoid the accident. They also urge he was at fault for not seeing Terrance until the child was "in the middle of the street," by which time the accident was unavoidable. They finally contend that under the circumstances, Hawkins did not exercise care "commensurate with the conditions of the road." La. R.S. 32:64.
The jurisprudence imposes a high degree of care upon a driver who sees a child on or near the road; the driver must anticipate that the child, with limited judgment and ability to appreciate the danger, might be inattentive and place himself in sudden peril. Buckley v. Exxon Corp., supra. Hawkins counters that the driver's duty to exercise a high standard of care arises only when he becomes aware of the child or when the circumstances show he should have been aware of the child's presence. Weatherford v. Commercial Union Ins. Co., 93 0841 (La. App. 1st Cir. 5/20/94), 637 So.2d 1208, aff'd 94-1793 (La.2/20/95), 650 So.2d 763; Jeansonne v. Corbett, 496 So.2d 1346 (La.App. 3d Cir.1986); Bruno v. Daniels, 328 So.2d 739 (La.App. 4th Cir.1976).
Hawkins argues there is no record evidence that he actually saw or should have seen any children immediately prior to the accident. His own testimony was that Terrance was out of sight until he suddenly came around the blind corner; Ms. Jones's neighbor (and distant relative), Tammy Woods, testified that children often ride their bikes in the area, but she did not say that any were *756 on the road where Hawkins could or should have seen them at the time. On this evidence, the jury was entitled to find that the standard of care of Buckley v. Exxon Corp., supra, did not attach, and Hawkins exercised reasonable care.
The appellants also urge that because of the lush vegetation, Hawkins should have stopped and peered around the corner before proceeding. In support they cite Sharpley v. City of Baton Rouge, 95 0574 (La.App. 1st Cir. 11/9/95), 665 So.2d 21. Sharpley, however, requires a driver to stop if he cannot see clearly ahead, a situation not presented in the instant case. We are aware of no other special circumstances requiring Hawkins to stop before proceeding. Cf. Messex v. Louisiana Dept. of Highways, 302 So.2d 40 (La.App. 3d Cir.1974); Wilson v. United States, 92-455 (M.D.La.1/13/95), 874 F.Supp. 128.
The appellants further contend that Hawkins breached his general duty of driving in a manner commensurate with the conditions of the road. La. R.S. 32:64. The record shows, however, that Hawkins, driving slowly, reacted to Terrance's sudden appearance by making a sharp turn to the right and running completely off the road to avoid a collision. This evasive maneuver was exceptional but simply too late to prevent impact with a bicycle that could not correct its course or stop.[6] On the record presented, the jury could reasonably conclude that Hawkins exercised adequate care. Moore v. State Farm, supra. The judgment in his favor will be affirmed.
By their second assignment the appellants urge the jury was plainly wrong in failing to find the owners of the overgrown lot, T.C. and Cleo Alexander, at fault or strictly liable for obstructing Hawkins's view. They contend that the dangerous condition at the corner was a result of the Alexanders' negligence in failing to trim their bushes and maintain their property; they also assert strict liability for ownership of a defective thing.
The jury's finding that the Alexanders were not at fault is correct with respect to the strict liability claim; the owner of bushes that overhang a public right of way is usually liable only if there is something inherently defective about the bushes. Houssiere v. Lafayette Ins. Co., 559 So.2d 903 (La.App. 4th Cir.1990). However, the negligence claim is based on the Alexanders' alleged failure to trim and maintain their bushes and trees in circumstances where they knew or should have known that the overgrowth posed a danger to motorists and to cyclists like Terrance. According to the witnesses, especially Willis, the condition had existed for years; the duration and extent of the overgrowth shows that the Alexanders knew or should have known that their bushes created a hazard for persons negotiating the intersection. See Kent v. Gulf States Util., 418 So.2d 493, 497 (La.1982). The Alexanders' cousin, Clarence, testified that at their request he used a chain saw to clear the vegetation, probably soon after this accident; normal maintenance would have obviated the problem. On this record, the jury was clearly wrong to absolve the Alexanders of fault. The judgment in their favor will be reversed.

Division of liability
Having concluded that the District Court erred in failing to find the city and the Alexanders liable, we must now resolve the case in a manner which is just, legal and proper on the record presented. La. C.C.P. art. 2164. The appellate record is complete, thus obviating the need for remand. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975).
At the outset we note that a six-year-old child is not considered to be capable of fault. Moore v. State Farm, supra, and authorities therein. Nevertheless, under recent amendments to La. C.C. art. 2324, a joint tortfeasor is not liable to the plaintiff for more than his own degree of fault, and there is no solidarity among joint tortfeasors.[7] The fault of all persons who contributed *757 to the injury must be considered. La. C.C. art. 2323. As noted, the parent is required to use reasonable precautions in supervising his or her child. Wilson v. United States, supra.
The allocation of fault among the parties is usually gauged by the factors enunciated in Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La.1985).[8] The record discloses a significant level of negligent supervision on the part of Terrance's parents. His mother and father gave him this bicycle for Christmas 1992, taught him how to ride, but did not give him a helmet or any other safety gear. Ms. Jones testified that she instructed him to stop at any intersection or stop sign; Willis told him to "slow down" at intersections. Terrance was six years old, and Ms. Jones admitted he had "problems disobeying those instructions," for which she sometimes had to scold or punish him. She added that Terrance was "kind of slow" to learn the rules of bicycling, and she was aware that if he came down the hill on Calhoun, he would be going too fast to stop or make the turn. She made no attempt to keep him from riding without supervision. Willis often accompanied Terrance on bike rides, but on the date of the accident he allowed him to go alone. In spite of the boy's tender age and the problems noted by Ms. Jones, he watched Terrance make the block a few times, then "just sat down"; moments later the accident occurred.
Given the appellants' "superior capacity" to supervise their child, the social significance of parental guidance, and their awareness of the danger posed by the blind intersection, we find Ms. Jones 30% at fault, and Willis 45% at fault.
The city owes a duty to keep its streets reasonably safe for use by the public; notably, the city had no program to inspect its streets, or even to require its employees to report potentially hazardous conditions; instead, it relied on voluntary reporting of dangerous conditions by city employees and the defensive driving of motorists. There was no indication that the city's conduct resulted from "haste," but the record proves that traffic at this intersection was low volume, and testimony suggests that the overgrowth was somewhat seasonal in nature. The city's fault will be fixed at 20%. The Alexanders are not charged with maintaining streets, and were negligent because their overgrown foliage contributed to the accident. Their fault is fixed at 5%.
Judgment will be rendered accordingly.

Quantum
As a result of the accident, Terrance was thrown from his bicycle and onto the street; he was transported to LSU Medical Center, but has no specific recollection of the day of the accident. Dr. Carl Bilderbeck, an orthopedic resident at LSU, testified that Terrance sustained a fractured femur and a head injury with fluctuating mental status. Terrance remained in the Pediatric Intensive Care Unit for five days, and was in skeletal traction until discharged some 30 days after the accident. He had to wear a hip cast for another three weeks; when he returned to school in September, he had to use a walker and then crutches. He attended formal rehabilitation through January 1994, and has continued exercises at home. Hospital and outpatient bills from LSU Medical Center total $26,760.26. All of them appear to be related to the accident.
Dr. Bilderbeck testified that Terrance's prognosis on discharge was generally good, and that children his age tended to rehabilitate well; Ms. Jones agreed that he has done well since therapy. Although Willis stated that Terrance still has a limp, both he *758 and Ms. Jones admitted he still plays basketball and other sports. Dr. Phillip Osborne of the Shreveport Impairment Center examined Terrance in January 1995, some 18 months after the accident. He found the boy's gait to be "reasonably good," limited (2 cm) leg length discrepancy, minimally impaired hip rotation and slight muscle atrophy. He assessed Terrance's whole body disability at 4%. In view of the head and leg injuries, length of recovery, and residual impairment, general damages of $100,000 are appropriate for Terrance. See, e.g., Briggs v. Hartford Ins. Co., supra; Riche v. City of Baton Rouge, 541 So.2d 905 (La.App. 1st Cir.1988); Budget Rent-A-Car of New Orleans v. Gradnigo, 611 So.2d 147 (La.App. 3d Cir.1992); Burdis v. Lafourche Parish Police Jury, 618 So.2d 971 (La.App. 1st Cir.), writ denied 620 So.2d 843 (1993); Wheat v. State Farm Fire & Cas., 583 So.2d 1 (La.App. 1st Cir.), writs denied 583 So.2d 1145 (1991).
In petition the appellants also requested various other items of damage. We have considered that Willis came to the scene of the accident moments after it occurred, and saw Terrance lying unconscious on the road. However, he did not establish that the experience caused him "severe, debilitating, and foreseeable" emotional distress. La. C.C. art. 2315.6. Both parents' claims for loss of consortium are unsupported by any specific evidence, as was the demand for loss of earning capacity. These elements of damage are rejected as too speculative.

Conclusion
For the reasons expressed, the judgment is affirmed insofar as it absolved Floyd Hawkins and Safeco Insurance Company of liability for the accident. The judgment is reversed, however, with respect to the City of Shreveport and T.C. and Cleo Alexander. We render judgment as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, Sandra Jones, individually, against the City of Shreveport, individually, in the full sum of Five Thousand, Three hundred, fifty-two dollars and 05/100 ($5,352.05); and judgment in favor of Sandra Jones, as provisional tutrix of the minor child, Terrance Jones, against the City of Shreveport, individually, in the full sum of Twenty Thousand and 00/100 ($20,000) dollars; both sums to bear legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, Sandra Jones, individually, against the defendants, T.C. Alexander and Cleo Alexander, in the sum of One Thousand, Three hundred, thirty-eight and 01/100 ($1,338.01) dollars; and judgment in favor of Sandra Jones, as provisional tutrix of the minor child, Terrance Jones, against T.C. and Cleo Alexander, in the sum of Five Thousand and 00/100 ($5,000) dollars; both sums to bear legal interest from date of judicial demand until paid.
Trial and appellate costs are assessed 50% to the appellants, Sandra Jones and Randolph Willis, to the extent permitted by La. C.C.P. art. 5188, and 5% to appellees T.C. Alexander and Cleo Alexander. Costs are not assessed to the City of Shreveport. La. R.S. 13:4521.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
BROWN, J., concurs with reasons.
CARAWAY, J., dissents with reasons.
BROWN, Judge, concurring.
Without supervision, these parents allowed their six-year-old child to ride his bicycle down this hill. This was gross negligence. I agree that under the circumstances of this case that the city was also at fault in neglecting to clear the foliage obstructing the view at this intersection. The question seems to be whether this accident would have occurred regardless of the city's neglect.
The plurality in Roberts v. Benoit, 605 So.2d 1032 (La.1991), stated "... inasmuch as the sheriff's actions can be said to have appreciably enhanced the chance of the accident occurring, they are a cause-in-fact of the accident." Exactly what was meant by this statement is unclear; however, Professor Malone's discussion in Ruminations on *759 Cause-In-Fact, 9 Stan. L.Rev. 60 (1956), proposes that any doubt of what would have happened without defendant's negligence should be resolved in plaintiff's favor when plaintiff's injuries are clearly among the foreseeable consequences of defendant's negligent conduct. See Bannerman v. Bishop, 28,382 (La.App.2d Cir. 10/16/96), 688 So.2d 570, writ denied, 96-2755 (La.01/10/97), 685 So.2d 146.
CARAWAY, Judge, dissenting.
I respectfully dissent from the majority's factual analysis of this accident which the jury could reasonably determine as unavoidable.
The jury considered both the actions of the driver, Hawkins, and the condition of the intersection and the adjoining lot owned by the Alexanders and found the parties not negligent. From my review of the record, such verdict had much to do with the locations of the bicycle and automobile upon entering the intersection of Calhoun and Chester and their relative speeds, and little to do with the analysis of blind corners and missing stop signs which the majority now imposes upon this case.
Hawkins was traveling only between fifteen and twenty miles per hour at the time of the accident. He was approximately sixtyyears old at the time and drove daily down Chester Street to his home. Terrance suddenly appeared coming down a steep incline in the middle of Calhoun Street attempting to turn east toward Hawkins' vehicle. Instead of turning into the eastbound lane on Chester, Terrance's speed forced him wide and out-of-control all the way across Hawkins' westbound lane to the edge of the street and grass shoulder to where Hawkins' vehicle had swerved upon impact.
Hawkins, whose actions all rule reasonable, was unable to even brake as he swerved right onto the shoulder striking Terrance approximately at a point where the east line of Calhoun would extend across Chester to its north line. With the impact point at that intersecting line of the two streets, Hawkins' vehicle proceeded on along the shoulder where he immediately had to swerve again back to the left upon the blacktop to avoid hitting a utility pole on the edge of the street. The pole is located at the other intersecting line of the two streets. Thus, Hawkins' evasive actions swerving right and left all happened approximately within the intersection itself. This view of the accident, as occurring within the intersection was supported by the location of Terrance's injured body in the street and by the testimony of Tammy Woods, who heard noise and glanced a view of the accident from her Calhoun Street house on the opposite corner.
Not surprisingly, the word "unavoidable" was used in the testimony describing this accident, and the jury could reasonably view the accident from that causative perspective discounting any slight difference that a clean fence might have made upon Hawkins' reactions. In other words, the jury could conclude that Terrance was out-of-control coming down the slope and that, whether or not the fence line had been cleared, Hawkins, traveling at fifteen miles per hour, was already too close to entering the intersection when Terrance appeared.
Moreover, the duties of the Alexanders and the City which the majority would impose were entitled to be weighed by the jury and trial court on these facts in a manner reflecting their understanding of residential streets and lot owners. The City regulated safety along Chester Street and through this intersection with the imposition of a twentyfive mile per hour speed limit. Although a duty to erect a stop sign on Calhoun at its Tintersection with Chester might have been called into question had this been a two car accident, a six-year old, out-of-control bike rider does not fall within the scope of such duty. The Alexanders' duty extends how far? Must the lot owner remove the fence and the large tree trunk at the corner of Chester and Calhoun? Where can such owner routinely park cars in relation to the lot, the street and the corner for the protection of children on bikes?
For these reasons, I would honor the manifest error/clearly wrong rule in this case and defer to the assessment of the facts by the jury and trial court.

*760 ON REHEARING
PER CURIAM.
On application of the plaintiffs we have reexamined the statement in footnote 7 that the Supreme Court's opinion in Keith v. United States Fidelity & Guar. Co., 96-2075 (La.5/9/97), 694 So.2d 180, mandates retroactive application of the 1996 amendment to La. C.C. art. 2324.
Act 3 of the 1996 First Extra Session amended both arts. 2323 and 2324. The Keith opinion makes the general statement, in at least three places, that "Act 3" is procedural only. Factually, however, Keith involves only the application of art. 2323, and in certain passages the Supreme Court limits its holding to that article, as amended by Act 3: "After carefully considering Act 3, we find that the legislative amendment of La. Civ. Code arts. [sic] 2323 was procedural legislation." Id., at 183.
Solidary liability for co-tortfeasors, as provided in art. 2324 prior to the 1996 amendment, has been an integral part of the State's civil law tradition for over 150 years. Touchard v. Williams, 92-2919 (La.4/12/93), 617 So.2d 885, and citations therein. A prior (1987) amendment to art. 2324which restricted solidarity to 50% of the plaintiff's recoverable damageswas held to be substantive and prospective only. Egros v. Pempton, 606 So.2d 780 (La.1992), fn. 10. The 1996 amendment abolishes solidary liability except in cases of conspiracy to commit an intentional and willful act. Because the changes effected by the 1996 amendment appear to be even more substantial than those in 1987, this court and at least one other court had held (prior to the rendition of Keith, supra) that the 1996 amendment to art. 2324 is substantive and prospective only. Jackson v. Town of Grambling, 29,198 (La. App. 2 Cir. 2/26/97), 690 So.2d 942, fn. 4; Moore v. Safeway Inc., 95 1552 (La.App. 1 Cir. 11/22/96), 700 So.2d 831, fn. 19, writ denied; Thornhill v. State, 95 1946 (La. App 1 Cir. 6/28/96), 676 So.2d 799, fn. 14, writs denied 96-2014, 96-2021 (La.11/8/96), 683 So.2d 272.
For these reasons, we now find on reconsideration that the 1996 amendment to art. 2324 is indeed substantive and does not apply to the instant case, which arose before the effective date of the amendment. The judgment will therefore be amended in accord with the 1987 version of art. 2324:
If liability is not solidary pursuant to Paragraph A * * *, then liability for damages caused by two or more persons shall be solidary only to the extent necessary for the person suffering injury, death, or loss to recover fifty percent of his recoverable damages; however, when the amount of recovery has been reduced in accordance with the preceding Article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of fault has been attributed.
In other words, the "judgment debtor's exposure is limited, in the absence of a greater than 50% assignment of that debtor's fault, to fifty percent of the plaintiff's `recoverable damages.'" Touchard v. Williams, supra; Ventress v. Union Pacific R. Co., 95-1240 (La.App. 4 Cir. 12/28/95), 666 So.2d 1210, rev'd in part on other grounds 96-0501 (La.5/3/96), 672 So.2d 668. The effect of 50% provision is to "cap liability at 50% rather than create a solidary liability among joint tortfeasors which is conditioned upon the fortuitous event of a 50% recovery." Touchard, 617 So.2d at 892.
Because Terrance cannot be at fault, his general damages are not subject to reduction and each tortfeasor is liable for 50% of these damages. Ms. Jones, by contrast, has been found guilty of more fault than any defendant, so her special damages for Terrance's medical expenses are subject to the limitations imposed on a "judgment creditor to whom a greater degree of fault has been attributed."
We therefore reinstate our original opinion except insofar as it declared the 1996 amendment to art. 2324 retroactive. Judgment is rendered as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Sandra Jones, as provisional tutrix of the minor child, Terrance Jones, against the City of Shreveport in the full sum of Fifty Thousand *761 and 00/100 ($50,000) dollars; and in favor of Sandra Jones, individually, against the City of Shreveport in the full sum of Five Thousand, Three hundred, fifty-two and 05/100 ($5,352.05) dollars; both sums to bear legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, Sandra Jones, as provisional tutrix of the minor child, Terrance Jones, against T.C. Alexander and Cleo Alexander in the full sum of Fifty Thousand and 00/100 ($50,000) dollars; and in favor of Sandra Jones, individually, against T.C. Alexander and Cleo Alexander in the full sum of One Thousand, Three hundred, thirty-three and 01/100 ($1,338.01) dollars; both sums to bear legal interest from date of judicial demand until paid.
ORIGINAL OPINION AMENDED AND REINSTATED. JUDGMENT RENDERED.
CARAWAY, J., dissents with written reasons previously assigned.
BROWN, J., dissents. I agree with Caraway, J. that the jury and trial judge were not clearly wrong in finding that defendants' failings were not a cause-in-fact of the accident.
NOTES
[1] There is no indication in the pleadings or the testimony that Willis and Ms. Jones are, or ever were, married; the petition alleges that Ms. Jones is the provisional tutrix of her son.
[2] The State of Louisiana's writ application was granted, 96-1074 (La.6/21/96), 675 So.2d 1093, but the case was settled prior to submission.
[3] Appeal after remand, Rhodes v. Executive Risk Consultants, 29,142 (La.App.2d Cir. 1/22/97), 690 So.2d 1128 (unpublished opinion), writ denied 97-0475 (La.3/27/97), 692 So.2d 403.
[4] The accident report itself was not admitted in evidence.
[5] It is also clear that the warning signs and advisory speed limit on Chester Street, cited by the city as evidence that it adequately regulated the intersection, were principally intended to accommodate the curve on Chester, and not to protect against the risk of traffic entering from Calhoun.
[6] Hawkins testified that he chose not to hit his brakes because that would make him run over the cyclist. R.p. 477.
[7] The legislative act amending art. 2324, La. Acts 1996, 1st Ex.Sess., No. 3, has been found to be procedural in nature and subject to retroactive application. Keith v. United States Fid. & Guar. Co., 96-2075 (La.5/9/97), 694 So.2d 180. Although the precise issue presented in Keith was the application of La. C.C. art. 2323, which was also amended by Act 3, we are constrained to find that the discussion and decree in Keith address the entirety of the act, including art. 2324. Id., at 7, 694 So.2d at 183.
[8] "In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought." 469 So.2d at 974.