637 So.2d 1208 (1994)
Mary Gail WEATHERFORD, et al.
v.
COMMERCIAL UNION INSURANCE COMPANY, et al.
No. 93 CA 0841.
Court of Appeal of Louisiana, First Circuit.
May 20, 1994.
Rehearing Denied June 27, 1994.
*1209 Phil Breaux, St. Gabriel, for plaintiffs-appellants Mary Gail Weatherford, et al.
Daniel R. Atkinson, Jr., Baton Rouge, for defendants-appellees Commercial Union Ins. Co., et al.
Before FOIL, PITCHER and PARRO, JJ.
PITCHER, Judge.
This is an appeal from a trial court judgment in favor of the defendants, dismissing plaintiffs' suit for damages arising out of an automobile-bicycle collision.

FACTS
On Thursday, December 27, 1990, at approximately 3:00 p.m., Mario S. Termini (Father Termini), a Roman Catholic priest, was driving his van southbound at approximately 45 to 50 miles per hour, in the right lane of Louisiana Highway 75. Highway 75 was a two-lane highway in Iberville Parish and had a speed limit of 45 miles per hour. At the same time, eight-year-old Thomas Weatherford (Thomas) was also riding southbound on Highway 75, but in the northbound lane, on the new 20-inch bicycle which he had gotten two days earlier for Christmas.
When Father Termini rounded a curve in Highway 75, he observed Thomas to his left, in the northbound lane of travel. Thomas' side-to-side motions as he tried to reach the pedals on the large bicycle caught Father Termini's attention and "fascinated" him. As Father Termini observed Thomas' motions, Thomas turned the bicycle to the right and entered the southbound lane, into the path of Father Termini's van. Father Termini abruptly applied his brakes and steered the van to the right in an attempt to avoid a collision. The van skidded approximately 98 feet and struck Thomas, dragging him a distance of approximately 31 feet. As a result of the accident, Thomas sustained severe and permanent injuries.
On May 20, 1991, Mary Gail Weatherford, individually and as tutrix for her minor children, Thomas Weatherford and Eunice Weatherford (collectively, plaintiffs), filed this suit claiming damages for personal injuries to Thomas Weatherford and for loss of consortium for herself and Eunice Weatherford. Made defendants were Father Termini and his automobile insurer, American Employers Insurance Company (American Employers).[1] Also made defendants were Father Termini's employer, the Catholic Diocese of Baton Rouge (the Diocese)[2] and the Diocese's insurers, Catholic Mutual Relief Society and Virginia Surety Company (insurers).
Prior to trial, plaintiffs settled with Father Termini and American Employers and voluntarily dismissed those defendants with prejudice. The case proceeded to trial by jury *1210 against the remaining defendants. The Diocese offered as a defense Father Termini's lack of negligence and, alternatively, that Father Termini was not within the course and scope of his employment with the Diocese when the accident occurred.
The jury determined that Father Termini was not negligent and returned a verdict in favor of the Diocese and its insurers. Therefore, the issues of course and scope of employment and damages were not addressed by the jury. On March 4, 1993, the trial court signed a judgment in accordance with the jury verdict in favor of defendants and against plaintiffs, dismissing plaintiffs' suit, with prejudice, at their costs. Plaintiffs appealed and submitted the following assignments of error:
1. The jury erred in finding Father Termini was not negligent.
2. The court erred in refusing to allow plaintiffs' counsel to recall Father Termini to the witness stand.
With respect to plaintiffs' assignment of error number two, we note at the outset that the trial court is given much discretion over how the proceedings shall be conducted. See LSA-C.C.P. art. 1631. Our review of this assignment revealed no abuse of discretion on the part of the trial court. Therefore, this assignment of error lacks merit.

NEGLIGENCE OF FATHER TERMINI
It is well settled that a motorist who observes the presence of a child on a bicycle ahead of him is placed under a high degree of care, and should anticipate that the child is possessed of limited judgment and that the child's action might be sudden and unpredictable. Robertson v. Penn, 472 So.2d 927, 931 (La.App. 1st Cir.), writ denied, 476 So.2d 353 (La.1985). Louisiana jurisprudence places a high degree of care upon a motorist who sees a child on or near the road and imposes upon him a duty to anticipate that the child might be unable to appreciate impending danger, is likely to be inattentive, and might suddenly place himself in a position of peril. Buckley v. Exxon Corporation, 390 So.2d 512, 514 (La.1980); Dufrene v. Dixie Auto Insurance Co., 373 So.2d 162, 164 (La.1979). Every driver is required to give warning by sounding the horn when necessary and to exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway. See LSA-R.S. 32:214.
The duty to exercise greater than ordinary care to avoid injury to a child becomes operative or exists in favor of the child when his presence is known or should have been known under the existing facts of the particular case to the operator or driver of a motor vehicle. The motorist, upon discovering the presence of children in his path of travel or in a position where they could become imperiled, is under a duty to exercise the highest degree of care to avoid injury to them. Each case must be adjudged on the facts peculiar to it. No one case is absolutely controlling of another, as few cases are identical factually. Campo v. Vampran, 183 So.2d 57, 61 (La.App. 1st Cir.), writ. denied, 249 La. 64, 184 So.2d 735 (La.1966).
In the instant case, the jury determined that Father Termini was not negligent in causing the accident. The jury's determination of a factual issue should not be altered by an appellate court in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989). However, under the facts and circumstances here presented, we are convinced that the jury manifestly erred in its determination. Considering the high degree of care that is required of a motorist when he sees a young child on the road, neither the jurisprudence nor the evidence supports the jury's determination that Father Termini was not negligent in the manner in which he operated his vehicle shortly prior to and at the time of the accident. The presence of children on the road places the highest duty of care on the motorist, requiring him to take every available means to apprise the person in danger of his precarious position and at the same time exercise all maneuvers possible to avoid injury. Robertson v. Penn, 472 So.2d at 932. After reviewing the record in its entirety, we cannot say that Father Termini exercised the requisite degree of care.
The evidence simply does not support a finding that Father Termini took every available means to apprise Thomas of his precarious position. The record reveals that when *1211 he first noticed Thomas, Father Termini was traveling at a speed between 45 and 50 miles per hour. As he approached the curve in the highway, he saw Thomas in the left lane, from an unobstructed view of at least 500 feet. Father Termini testified: "... [A]s I approached that curve, ... the first thing I saw was Thomas as he rode that bicycle, which was much too large for him is what caught my attention...." When questioned about what he did when he saw Thomas, Father Termini stated that he believed, as a natural reflex action, he "let his foot off of the gas." On redirect examination, he testified that he could not remember whether he applied his brakes, but, "reflexively," he would say that he did brake when he saw Thomas.
There is no evidence in the record that Father Termini blew his horn to gain Thomas' attention or took any other evasive action prior to Thomas' right maneuver to avoid injury to Thomas. Even assuming arguendo that he did "reflexively" take his foot off the accelerator, he failed to take any other action designed to anticipate that Thomas might suddenly and unpredictably make a right turn into his lane of travel. Even though Thomas was "the first thing" that he saw, Father Termini failed to exercise greater than ordinary care to avoid injury to Thomas. Father Termini should have applied the brakes to reduce his speed below 45 miles per hour, blown his horn, and steered the van further to the right side of the road. Clearly, Father Termini's failure to take any of these actions was a breach of the duty imposed upon him to exercise greater than ordinary care upon observing a child on a bicycle in a perilous position on the road. Thus, the jury manifestly erred in finding that Father Termini was not negligent.[3]
Defendants contend that should this court find that Father Termini was, in fact, negligent, then the doctrine of sudden emergency is applicable in the instant case to relieve Father Termini of liability because Thomas' turning to the right was a sudden act creating an emergency which made it impossible for him to avoid striking the child. We are not persuaded by this argument. In this case, it cannot be said that the accident was unavoidable and that Father Termini is not liable. It is clear that Father Termini was aware of Thomas' presence on the highway and that he had sufficient time after noticing the child's presence to exercise the high degree of care required under the circumstances. Therefore, the doctrine is inapplicable under the facts and circumstances of the instant case to absolve Father Termini of negligence.

COURSE AND SCOPE OF EMPLOYMENT
As a result of the jury finding Father Termini free from negligence, it did not address the issue of whether he was acting in the course and scope of his employment when the accident occurred. Having found that the jury's determination as to Father Termini's negligence was manifestly erroneous, this court must now determine whether Father Termini was in the course and scope of his employment with the Diocese when the accident occurred.
Masters and employers are answerable for the damage caused by their servants in the exercise of the functions in which they are employed. LSA-C.C. art. 2320. The Diocese is vicariously liable for Father Termini's actions only if he committed the tort in question while in the course and scope of his duties as a Roman Catholic priest. The specific inquiry in determining whether an employee is within the course and scope of his employment is whether the employee's tortious conduct is so closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest. Johnson v. Dufrene, 433 So.2d 1109, 1112 (La.App. 4th Cir.), writ denied, 441 So.2d 765 (La.1983).
Both parties make viable arguments concerning the vicarious liability of the Diocese. Plaintiffs argue that Father Termini was acting within the course and scope of his employment because the accident occurred *1212 while he was returning from the home of an ill, elderly man in the Bayou Sorrel area where he discussed, among other subjects, the man's relationship with God.
On the other hand, the Diocese asserts that Father Termini was not within the course and scope of his employment when he collided with Thomas. It is the Diocese's position that Father Termini went to the man's home of his own volition on his day off and that he would have done so whether or not he was a priest, as this was his character and nature even prior to becoming a priest.
The Reverend Paul Counce, a Catholic priest, was called as a witness at trial, and he testified as to internal church law and regulations. Reverend Counce was the Diocese's Judicial Vicar and Vice Chancellor (canon lawyer) and its expert on internal church law and regulation at the time of trial.
According to Reverend Counce's testimony, "strictly speaking," a priest is not on duty twenty-four hours a day. The Code of Canon Law for the Universal Catholic Church provides that a priest is entitled to a month's vacation each year, and other time off as is reasonable. Moreover, the Bishop of the Baton Rouge Diocese granted Diocesan priests one day off per week. He further testified that he was not personally aware of the Bishop ever having asked a priest to do ministry on his day off. On his day off, a priest is not expected to do any ministry whatsoever, and a priest does not report where he is or what he is doing.[4] A priest does not have to say mass on his day off, even if he is the only priest in the parish. Unless a priest is going to be away from the Diocese for more than a week for purposes of ministry or vacation, he does not have to let the Bishop or his office know where he is or that he will be away. Reverend Counce also testified that counseling a person with respect to his relationship with God, in accordance with church doctrine, is a priestly function and part of a priest's ministry, but a priest does not counsel only on behalf of the Diocese, but as a priest. Counseling is not on behalf of the Diocese if the priest does it on his day off and of his own initiative when the Diocese does not expect him to do so. A priest may dress as he chooses on his day off; however, clerical garb is ordinarily the proper attire when a priest is ministering.[5]
Our thorough examination of the record establishes that the accident occurred on a Thursday, which had been Father Termini's day off for years, that he was driving a vehicle personally owned and insured by him, that he went to the man's home in Bayou Sorrell and counseled him of his own free volition, that he neither sought nor received reimbursement from the Diocese for his expenses in traveling to see the man, that the man was not a parishioner in his parish, and that he was neither required nor asked by the Diocese to perform any priestly duties or functions on the date of the accident. Father Termini testified that for most of his life, even before he became a priest,[6] it was his nature to talk to people about God, and that he counseled family, friends and employees about God. He further testified that he considered visiting people on his day off as his hobby, and the Diocese neither asked nor expected him to visit people as a part of his duties on his day off.
Considering the evidence presented in the record and the jurisprudence, we cannot say that Father Termini was acting in the course and scope of his employment with the Diocese when he negligently committed the tort in question. Accordingly, the Diocese and its insurers are not vicariously liable for Father Termini's negligence.

*1213 CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed against the plaintiffs.
AFFIRMED.
FOIL, J., concurs in the result.
NOTES
[1] American Employers was erroneously referred to by plaintiffs in their petition as Commercial Union Insurance Company.
[2] The Diocese stipulated that Father Termini was an employee on the date of the accident.
[3] The comparative fault, if any, of Thomas Weatherford is not raised by the parties.
[4] A priest is expected to perform his priestly duties on his regular day off when a major feast day or holiday (e.g., Christmas) falls on his day off; however, he is permitted to switch his day off to some other day.
[5] Father Termini could not remember whether he was wearing clerical garb when the accident occurred, and the record does not conclusively establish this fact.
[6] Father Termini owned and operated a contracting company for most of his life. He married and raised a family in the Baton Rouge area. Following the death of his wife, he decided to enter the seminary and become a Roman Catholic priest; he was ordained on September 8, 1979.