# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 06-0529 C/W 06-0530

**DAVID CHAPMAN, ET AL.**

**VERSUS**

**SAFEWAY INSURANCE COMPANY OF LOUISIANA, ET AL.**

**\*\*\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT,
PARISH OF ST. LANDRY, NO. 03-C-0903 C/W 03-C-0904-D,
HONORABLE DONALD W. HEBERT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\*\*\***

## JIMMIE C. PETERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\*\*\***

Court composed of Chief Judge Ulysses Gene Thibodeaux and Judges Jimmie C. Peters and J. David Painter.

**AFFIRMED.**

Louis M. Corne
1014 West University Avenue
Lafayette, LA  70506
(337) 264-1160
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    David Chapman, et al.

Jeffery Paul Robert
Law Firm of Grayson H. Brown
111 United Plaza, Suite 350
8545 United Plaza Blvd.
Baton Rouge, LA  70809
(225) 924-9585
COUNSEL FOR DEFENDANTS/APPELLEES:
    Safeway Insurance Company of Louisiana, et al.

PETERS, J.

These consolidated cases arise from an automobile accident which occurred in St. Landry Parish, Louisiana, on November 6, 2002. The plaintiffs in both cases appeal the grant of a partial summary judgment in favor of one of the defendants, Church of God in Christ, Inc., dismissing that defendant from the litigation. For the following reasons, we affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

The accident at issue in this litigation occurred on November 6, 2002, between 11:00 p.m. and midnight at the intersection of U.S. Highway 190 and Louisiana Highway 95 in St. Landry Parish when a van driven by Johnathan L. Williams and owned by Mr. Williams' wife collided with a pickup truck. Among the passengers in the van were Dustin Chapman, the minor son of David and Serena Chapman, and Cavin Hanchett, the minor son of Mae Bell Hanchett. In February 2003, the Chapmans and Ms. Hanchett filed separate suits against Mr. Williams and several other defendants to recover the damages they and their children sustained as a result of the accident. By an order dated May 21, 2003, the trial court consolidated these two suits.

The pleadings in this litigation are substantial. However, disposition of the issue now before us involves an analysis of the relationships between Mr. Williams, the Church of God in Christ of Eunice, Inc. (Eunice church), and the Church of God in Christ, Inc., located in Memphis, Tennessee (national church). At the time of the accident, Mr. Williams was the pastor of the Eunice church, which, as the name suggests, is an affiliate church located in Eunice, Louisiana. The plaintiffs named the Eunice church as a defendant, asserting that, at the time of the accident, Mr. Williams was an employee of the church and was in the course and scope of that employment

relationship. Thus, the plaintiffs asserted, the Eunice church was liable to them for the damages they sustained as a result of Mr. Williams' negligence based on the principle of *respondeat superior*. Based on that same principle, the plaintiffs asserted that Mr. Williams was also an employee of the national church and that it was also vicariously liable for their damages. Specifically, the plaintiffs asserted that the national church and the Eunice church constituted a "single business enterprise," or that one was the *alter ego* of the other.

During the discovery process, the plaintiffs deposed Mr. Williams and Enoch Perry, III, an elder and general counsel of the national church. Using this deposition testimony, the national church filed a motion for summary judgment seeking dismissal from the litigation. In that motion, the national church sought relief on two grounds. First, it asserted that the two church corporations were separate and distinct legal entities and that Mr. Williams was not its employee. Second, it asserted that Mr. Williams was on a personal mission at the time of the accident and therefore it was not vicariously liable regardless of whether an employment relationship existed.

After a February 6, 2006 hearing, the trial court granted the motion for summary judgment and dismissed the national church as a party defendant in the consolidated matters. The trial court also designated the partial judgment as a final judgment subject to immediate appeal. The plaintiffs perfected this appeal, seeking reversal of the judgment.[1] In our opinion which follows, we will address only the course and scope of employment ground because we find it to be dispositive of the appeal.

---

[1]As previously stated, the two suits were filed in the lower court and consolidated there. Our opinion is rendered in *Chapman v. Safeway Insurance Co. of Louisiana*, 06-529 (La.App 3 Cir. _/_/06), ___ So.2d ___. A separate judgment will be rendered this date in *Hanchett v. Safeway Insurance Co. of Louisiana*, 06-530 (La.App. 3 Cir. _/_/06), ___ So.2d ___.

# SUMMARY JUDGMENT PROCEDURE

The supreme court recently discussed the law pertaining to summary judgment procedure and stated the following:

> We review a district court's grant of summary judgment *de novo*, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Summary judgment is warranted only if "there is no genuine issue as to material fact and [ ] the mover is entitled to judgment as a matter of law." La.Code Civ. Proc. art. 966(C)(1). In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor.
>
> A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Id*.

Louisiana Code of Civil Procedure art. 966(C)(2) provides:

> (2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, motion, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

*Hines v. Garrett*, 04-806, pp. 1-2 (La. 6/25/04), 876 So.2d 764, 765-66 (alteration in original).

In the matter before us, the plaintiffs will bear the burden of proof at trial. Therefore, the national church need only establish that there is an absence of factual support for one or more elements essential to the plaintiffs' claim.

3

## VICARIOUS LIABILITY AND COURSE AND SCOPE OF EMPLOYMENT

Louisiana Civil Code Article 2320 provides in part: "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." This principle of law is comprised in the term *respondeat superior*.

> Vicarious liability is liability for the tortious act of another person. *See* Dan B. Dobbs, The Law of Torts, § 333, at 905 (2001). Vicarious liability is most often imposed on an employer for the torts of its employee committed in the course and scope of employment. At common law, the Latin phrase *respondeat superior* ("let the master answer") denotes this type of liability. *Id.*; Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law, § 13-2, at 308-09 (1996). In Louisiana, this concept is codified. *See* LSA-C.C. art. 2320; LSA-R.S. 9:3921.

*Quebedeaux v. Dow Chem. Co.*, 01-2297, p. 4 (La. 6/21/02), 820 So.2d 542, 545 n.5.

In determining whether an employer is liable for the acts of an employee, the factors to be considered are whether the tortious act was primarily employment rooted, reasonably incidental to the performance of the employee's duties, occurred on the employer's premises, and occurred during hours of employment. *LeBrane v. Lewis*, 292 So.2d 216 (La.1974). Stated another way, the issue is whether the tortious conduct of the employee so closely connected him or her in time, place, and causation to his or her employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests. *Id.*

In *Weatherford v. Commercial Union Insurance Co.*, 93-841 (La.App. 1 Cir. 5/20/94). 637 So.2d 1208, *aff'd on other grounds*, 94-1793, 94-1927 (La. 2/20/95), 650 So.2d 763, the plaintiff filed suit on behalf of herself and her child, who was injured when his bicycle was struck by the vehicle of a Catholic priest returning from

counseling an ill person.  The plaintiff argued that the Diocese of Baton Rouge, the priest's employer, was vicariously liable pursuant to La.Civ.Code art. 2320.  The Diocese argued that the priest went to the man's home of his own volition on his day off in his personal vehicle and that, given the priest's character and nature, the priest did something he would have done had he not been a priest.  Because the trial court had not reached the issue as framed on appeal, the first circuit conducted a *de novo* review of the record and concluded that the priest was not acting in the course and scope of his employment at the time of the accident.

In the present case, Mr. Williams' deposition testimony established that when the November 6, 2002 accident occurred, he was returning to Eunice in his wife's van after preaching a revival service in Church Point, Louisiana.  Although the Church Point church was also a Church of God in Christ church, it was otherwise unrelated to the Eunice church, and Mr. Williams' pastoral duties at the Eunice church did not include participation in the revival service.  According to Mr. Williams, he received a telephone call at his home requesting that he preach the Church Point revival and his participation was purely voluntary and for the benefit of the Church Point congregation only.  He explained that it was not unusual for him to be involved in preaching activities outside of his role as the pastor of the Eunice church and that these preaching activities were not limited to Church of God in Christ Churches, but were interdenominational.  In other words, Mr. Williams' participation in revival services at other churches had less to do with his church affiliation than with his ability as a speaker.  As examples, he explained that in the past he had conducted a revival at a Baptist church in Baton Rouge, Louisiana; had participated in a "gospel youth explosion" in Rayne, Louisiana; and had participated

5

in numerous other Christian activities involving singing, drama, and religious art, which activities did not involve the Eunice church.

Concerning the presence of the two minor children injured in the accident, Mr. Williams testified that he had transported them as well as other young members of the Eunice church choir to the Church Point revival. According to Mr. Williams, these choir members had volunteered to travel with him and sing at the revival. He stressed the fact that their participation was for the benefit of the revival services, and not the Eunice church. Because the service was on a Wednesday night, he did not leave his pulpit vacant by involving himself in the revival.

Mr. Williams explained that he believed that, as a Christian, he had an obligation or "calling" to preach the Word of God and minister to others. While acknowledging that this obligation or calling was a qualification for being the pastor of the Eunice church, it existed within him before becoming a pastor of that church and would continue after he left that church and whether he pastored any other church.

Mr. Perry testified by deposition that Mr. Williams, as pastor of the Eunice church, had complete authority to make all decisions regarding the scheduling of services in the local church. Mr. Perry also testified that preaching at other churches is not part of Mr. Williams' pastoral duties at the Eunice church.[2]

In opposition to the motion for summary judgment, the plaintiffs introduced identical affidavits of Serena Chapman and Mae Bell Hanchett. In those affidavits, each affiant asserted that "she would not allow her son to be out late at night on a

---

[2]A copy of the Official Manual of the Church of God in Christ was identified by Mr. Perry and attached to his deposition. Part V of the Manual distinguishes between a minister and a pastor. It states that a local preacher is a minister who has been granted a license to preach, while a pastor is the minister appointed over a congregation.

school night unless it was a supervised church function" and that "[a]t no time did [Mr. Williams] state that the trip was not a church sponsored trip."

The plaintiffs' basic argument is that one cannot separate the duties of the pastor of a Christian church from his responsibilities as a Christian. That is to say, he maintains his role as pastor twenty-four hours per day. While we agree that a pastor is a pastor around the clock, we also note that it is a tenet of faith common to Christians of all denominations that devotion and service to God are continuing obligations, and, in this regard, the obligations owed by a pastor, a minister, a preacher, and a layman are the same. It follows that the responsibilities of a pastor have to be distinguished between purely pastoral duties and activities otherwise associated with his Christian responsibilities.

In the matter now before us, the trial court basically concluded that Mr. Williams was not engaged in pastoral duties at the time of the accident, and we agree. The affidavits submitted by the plaintiffs simply repeat allegations of the pleadings. When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations of his pleading, but his response must set forth specific facts showing that there is a genuine issue for trial. La.Code Civ.P. art. 967(B). If the adverse party does not so respond, summary judgment, if appropriate, shall be rendered against him. *Id.* We find that the plaintiffs have not produced factual support sufficient to establish they will be able to satisfy their evidentiary burden of proof at trial that Williams' conduct was within the course and scope of his employment for purposes of vicarious liability. The partial summary judgment was properly rendered dismissing the national church from the lawsuit.

**DISPOSITION**

7

For the foregoing reasons, we affirm the judgment of the trial court. We assess all costs of the appeal to the plaintiffs.

**AFFIRMED.**